**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RICOH COMPANY, LTD., RICOH CORPORATION and RICOH ELECTRONICS, INC., | : : : : | **OPINION** |
| Plaintiffs, | : : | Civ. No. 03-2612 (WHW) |
| v. | : : | |
| KATUN CORPORATION, PNA HOLDINGS LLC, GENERAL PLASTICS INDUSTRIAL CO., LTD., and NASHUA CORPORATION, | : : : : : : | |
| Defendants. | : : | |

**Walls, District Judge**

Plaintiffs Ricoh Company, Ltd., Ricoh Corporation and Ricoh Electronics, Inc. ("Ricoh") and defendants General Plastics Industrial Co. Ltd.'s ("GPI"), Katun Corporation's ("Katun") PNA Holdings, LLC and Nashua Corporation ("Nashua") (together, "Defendants") move the Court for the construction of certain disputed claim terms.  Defendants also move the Court for partial summary judgment on the invalidity of U.S. Patent No. 6,075,963 (the "'963 patent").  Ricoh moves the Court for partial summary judgment on the infringement of the '963 patent and cross-moves on the "no-invalidity" of the '963 patent.  Pursuant to Fed.R.Civ.P. 78, the motions are decided without oral argument.

**FACTS AND PROCEDURAL BACKGROUND**

Ricoh is a family of companies that manufactures photocopying machines and related replacement products, including photocopier toner.  Defendants sell replacement parts for use in

**FOR PUBLICATION**

copy machines.  Katun works with GPI and Nashua to develop and manufacture replacement toner bottles.  GPI manufactures and sells to Nashua two of the toner bottles and lids at issue in this case.  Nashua purchases toner bottles and lids from GPI, and itself oversees the manufacture of certain other toner bottles and lids at issue.  Nashua then labels and fills the bottles with toner, which it sells to Katun.

In its Amended Complaint, Ricoh alleges that Defendants are liable, among other things, for infringement of six Ricoh patents based upon their manufacture and sale of toner bottles for use in Ricoh photocopiers.  The patents-in-suit are U.S. Patent Nos. 5,455,662 ("the '662 patent"), 5,627,631 ("the '631 patent"), 6,289,195 ("the '195 patent"), 6,418,293 ("the '293 patent"), 5,828,935 ("the '935 patent"), and the '963 patent (together, the "patents-in-suit" or the "Ricoh patents").  The patents-in-suit all relate to toner bottles but derive from two distinct specifications.  The first five patents-in-suit, the '662, '631, '963, '195, and '293 patents derive from the same patent application filed on December 28, 1993, and are part of the same patent family (the "'662 patent family").  The sixth patent-in-suit, the '935 patent, derives from a different patent application filed on October 11, 1996 and is based on a different "priority document" from the documents used for the '662 patent family.

The parties filed a Joint Claim Construction Statement ("JCCS") on July 23, 2004.  Exhibit 1 of the JCCS identifies terms on which the parties agree on a construction; Exhibit 2 identifies claim terms on which the parties disagree.

This case involves copier parts that are used to dispense replacement toner into a copier.  Before the generation of replacement toner bottles at issue here was invented, toner bottles were

FOR PUBLICATION

generally installed in a vertical position.  After the bottle was installed, the copier would rotate

the bottle to a horizontal position.  These toner bottles were restricted in size due to the amount

of space required to rotate the bottle.  However, a horizontally mounted bottled presented toner

delivery problems - the toner would spill out as the bottle was being mounted, and as the toner

was used, gravity would not propel the toner towards the bottle's mouth.

The new generation toner bottles are inserted in a horizontal position.  It is no longer

necessary for these bottles to move from a vertical position to a horizontal position, so they are

larger.  Ricoh claims that it solved the delivery problems by inventing a new lid that is removed

by the copier after the bottle is installed and a "scoop" system that delivers the toner to the mouth

of the bottle as needed.  In addition, the "screw" shape of the toner bottles allows the toner

bottled to be rotated inside the machine without any additional space.  Defendants claim that

Ricoh's bottle designs are not new and were anticipated by earlier patents.  Defendants point to a

number of patents obtained before the patents-in-suit and claim that Ricoh obtained its patents by

modifying the language in these existing patents.

## CLAIM CONSTRUCTION

### I.      Standard for Claim Construction

The construction of patent claims is a matter of law exclusively for the Court.  Markman

v. Westview Instruments, 52 F.3d 967, 976-79 (Fed. Cir. 1995).  This Court recently discussed

the standards for clam construction:

> The court must first look to the "intrinsic evidence," which consists of the patent claims,
> the specification, and the prosecution history if in evidence.  "Such intrinsic evidence is
> the most significant source of the legally operative meaning of disputed claim language."
> Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The court

-3-

FOR PUBLICATION

> should presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms.  See Johnson Worldwide Associates, Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999).  Of course, "claim construction is not philosophy . . . [it] is firmly anchored in reality by the understanding of those of ordinary skill in the art."  K-2 Corp. v. Salomon S.A., 191 F.3d 1356 (Fed. Cir. 1999).  And although the prosecution history can and should be used to understand the language used in the claims, it may not be used to "enlarge, diminish, or vary" the limitations in the claims.  Markman, 52 F.3d at 979 (citation omitted).

> "In most situations, an analysis of intrinsic evidence alone will resolve any ambiguity in a disputed claim term.  In such circumstances, it is improper to rely on extrinsic evidence," such as expert testimony, treatises and dictionaries, and articles.  Vitronics, 90 F.3d at 1583.  Accordingly, where the patent documents are unambiguous, expert testimony is entitled to no weight.  See id. (emphasis added).  Prior art may serve as a guide to the meaning of a disputed term and, particularly, as a time-saving demonstration of how a disputed term is used by those skilled in the art.  See id. at 1584.  Finally, "opinion testimony on claim construction should be treated with the utmost caution," because such testimony "amounts to no more than legal opinion – it is precisely the process of construction that the court must undertake."  Id. at 1585 (citation omitted).

Bristol-Myers Squibb Co. v. Immunex Corp., 86 F.Supp.2d 447, 448-49 (D.N.J. 2000).

A claim must be read as a whole, rather than element by element. See General Foods v. Studiengesell-Schaff Kohle mbH, 972 F.2d 1272, 1274 (Fed. Cir. 1992); Texas Instruments, Inc. v. U.S. Intern. Trade Com'n., 846 F.2d 1369, 1371 (Fed. Cir. 1988).  The "language of the claim frames and ultimately resolves all issues of claim interpretation."  Abtox, Inc. v. Exitron Corp., 122 F.3d 1019, 1023 (Fed. Cir. 1997).  The Court may not rewrite claims.  K-2 Corp., 191 F.3d at 1364 ("Courts do not rewrite claims; instead we give effect to the terms chosen by the patentee."); Texas Instruments v. U.S. Intern. Trade Com'n., 988 F.2d, 1165, 1171 (Fed. Cir. 1993) ("[c]ourts can neither broaden nor narrow claims to give the patentee something different than what he has set forth.") (citation omitted).

-4-

FOR PUBLICATION

As discussed, the Court should also look to the patent specification for guidance. "Claims must be read in view of the specification, of which they are a part. . . . [T]he description may act as a sort of dictionary, which explains the invention and may define terms used in the claims." Markman, 52 F.3d at 979 (citations omitted). "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Vitronics, 90 F.3d at 1582. A construction that stays true to the claim language and the description of the invention will be the correct construction. See Young Dental Mfg. Co. v. Q3 Special Prods., Inc., 112 F.3d 1137, 1142-43 (Fed. Cir. 1997). However, "'particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments.'" Rhine v. Casio, Inc., 183 F.3d 1342, 1346 (Fed. Cir. 1999), quoting Electro Med. Sys. S.A. v. Cooper Life Sciences, 34 F.3d 1048, 1054, 32 U.S.P.Q.2d 1017, 1021 (Fed. Cir. 1994); see also Transmatic, Inc. v. Gulton Industries, Inc., 53 F.3d 1270, 1277 (Fed. Cir. 1995). Of course, a patentee is free to define a claim term differently from its ordinary meaning, but any special definition must be "clearly stated in the patent specification or file history." Vitronics, 90 F.3d at 1582.

Prosecution history may be relevant to provide evidence of explicit statements by a patent applicant during prosecution to describe or distinguish a claimed invention over the prior art and thus serve to narrow the scope of a claim. Spectrum Int'l, Inc. v. Sterlite Corp., 164 F.3d 1372, 1378-79 (Fed. Cir. 1998).

When appropriate, a court may consider extrinsic evidence, such as expert testimony, to assist the court in understanding how one skilled in the field of the invention would interpret the

FOR PUBLICATION

technical aspects of the document.  Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298,

1309 (Fed. Cir. 1999).  Where expert testimony is inconsistent with the specification and file

history, it should be "accorded no weight."  Vitronics, 90 F.3d at 1584.  The Court may accept

extrinsic evidence to understand the underlying technology, but it should not use such evidence

to vary or contradict the claim language.  See Vitronics, 90 F.3d at 1583-84; Markman, 52 F.3d

at 980-81.

Finally, "[a]lthough technical treatises and dictionaries fall within the category of

extrinsic evidence, . . . they are worthy of special note.  Judges are free to consult such resources

at any time in order to better understand the underlying technology and may also rely on

dictionary definitions when construing claim terms, so long as the dictionary definition does not

contradict any definition found in or ascertained by a reading of the patent documents."

Vitronics, 90 F.3d at 1584, n. 6 (emphasis added).

II.    **Analysis**

A.    Construction of the Claim Terms Relating to "Shoulder"

The parties ask the Court to construe the following phrases related to the "shoulder"

portion of a toner container:

- "a shoulder portion forming a circumferential wall adjacent one end of said body"
  ('662 patent, Claim 1; '631 patent, Claims 1, 5, and 6)

- "a shoulder portion forming a wall adjacent to a first end of said hollow body"
  ('195 patent, Claims 7, 8, 9, 29, 30, and 31)

- "a shoulder portion adjoining a first end of said body and forming a wall"('293
  patent, Claims 1 and 22)

**FOR PUBLICATION**

The parties disagree over the meaning of the words "shoulder", "adjacent", and "end" in these

phrases.

> As an illustrative example, Claim 1 of the '662 patent reads:
>
>> said developer container having a hollow cylindrical main body comprising:
>>
>> a shoulder portion forming a circumferential wall adjacent one end of said body;
>>
>> a mouth portion on said one end, said mouth portion being smaller in diameter than said shoulder portion; and
>>
>> a guide means provided on said shoulder portion for guiding said developer stored in said developer container to said mouth portion as said main body is rotated.

('662 Patent, Claim 1).

> Ricoh argues that the shoulder is "an angle or curve in the outline of an object (as between the body and the neck of a bottle) and the parts adjacent to it."  This definition is based on a definition of "shoulder" found in Webster's dictionary, except for the Webster's definition reads "and *often* also the parts adjacent to it."  See *Webster's Third New International Dictionary of the English Language, Unabridged* (1993) ("*Webster's Third*").  Ricoh also proposes that "adjacent" be construed as "nearby" and "end" as "the last part lengthwise" but "not limited to the tip."

> Katun and Nashua argue that the "shoulder" is the "the wall at the mouth end of the bottle, which is substantially perpendicular to the outer surface of the body."  They argue that because the claim also requires that the "shoulder" form a "circumferential wall adjacent" to the body, and because a "wall" is a vertical structure, anything "adjoining" a horizontal body is necessarily perpendicular to that body.  Katun and Nashua also argue that because the claims

FOR PUBLICATION

require a comparison between the diameter of the shoulder and the mouth, the shoulder must be a

area with an single diameter.

GTI argues that the "shoulder" should be construed to include "an inner surface thereof

partly raised to the edge of the mouth portion to form raised portion(s) 85, 86a and 86." These

portions form a ramp-shaped protrusion that wraps around approximately half of the top of the

toner bottle.

Defendants also argue that "adjacent" should be construed as "relatively near and having

nothing of the same kind intervening" and that "end" should be construed as "the last part

lengthwise."

As discussed, the Court must start by analyzing the language of the claim itself,

construing the terms according to their ordinary and plain meaning. See Johnson Worldwide

Assocs., 175 F.2d at 989. In defining a term according to its plain meaning, it is appropriate to

rely upon certain extrinsic evidence, such as a regular dictionary. See Vitronics, 90 F.3d at 1584

n. 6. The Court finds that the ordinary meaning of the term "shoulder" is well- represented by

the definition found in Webster's dictionary: "an angle or curve in the outline of an object (as

between the body and the neck of a bottle)." *Webster's Third* at 2104. Nothing in the intrinsic

evidence contradicts this common definition. The Court is not convinced that "anything"

adjoining a wall must be perpendicular to that wall. As Ricoh points out, the claim specifications

recognize a wide variety of shoulder shapes with varying slopes, curves and angles. Nothing in

the patents' claims or specifications limit the shoulder to a perpendicular surface.

FOR PUBLICATION

Moreover, the Court does not derive as much significance as Defendants from the claims' requirement that the shoulder have a "diameter."  The claim requires only that the "shoulder" diameter be larger than the diameter of the mouth.  A conical object with a "mouth" at the narrow end will necessarily have an average diameter larger than that of the mouth, and that object's diameter will be larger than the mouth's diameter at every point up to where the two pieces join.  Therefore, it is not necessary to limit the construction of the term "shoulder" to a shape with a single diameter.

The Court does not, however, view the ordinary meaning of "shoulder" to include any parts adjacent to it.  Where, as here, various parts of a toner bottle are nearby, abut, or are attached to the shoulder, such a definition would obliterate the precise drafting of the claims.  For this reason, the Court rejects defendant GPI's proposed construction of "shoulder," which would include portions 85, 85(a) and 86.

The parties ask the court to construct the term "adjacent" as used in the context of "shoulder."  Defendants adopt the definiton "relatively near and having nothing of the same kind intervening" *Websters Third* at 26.  Plaintiffs construe "adjacent" to mean "nearby"or "not distant or far off." *Websters Third* at 26.  This Court finds that "adjacent" means relatively near, or nearby.  This Court is not convinced by Defendants' argument and does not find any suggestion in the patent that the added definition of "nothing of the same kind intervening" is applicable here. *Id*.

The parties agree that the term "end" means "the last part lengthwise," but do not agree on whether the last part lengthwise is the bottle's mouth or the bottle's shoulder, upon which the

FOR PUBLICATION

mouth rests.  The Court finds that the ordinary meaning of "last" is the part after which there is

no other.  After the shoulder, there is still a mouth, as well as other "adjacent" pieces.  Therefore,

the "last part lengthwise" can refer only to the tip or mouth of the bottle.   That said, when the

term "end" is used with a qualifier, such as the "end of said hollow body," the terms refers to

"the last part lengthwise" of that hollow body.  In this case, the "end" of the hollow body is

where the "shoulder" joins the body.

> B.    Construction of Claim Terms Relating to "Diameter"

The only disputed claim terms relating to "diameter" are "adjacent" and "end."  These

terms have already been construed where they relate to the term "shoulder" and the same

construction will apply here.

> C.    Construction of Claim Terms Relating to "Guide Means"

The parties ask the Court to construe the following phrases relating to "guide means":

- "guide means provided on said shoulder portion for guiding said developer stored in said developer container to said mouth portion as said main body is rotated" ('662 patent, Claim 1)

- "guide means provided on said shoulder portion for guiding a developer stored in said developer container to substantially said mouth portion as said body is rotated" ('631 patent, Claim 1)

- "guide means provided on said shoulder portion and extending from said shoulder portion toward said mouth portion for guiding a developer stored in said developer container to said mouth portion as said body is rotated" ('631 patent, Claim 5)

The parties agree that "guide means" is a "means plus function" limitation under 35

U.S.C. §112, ¶ 6.  "Construction of a 'means plus function' limitation requires identification of

the function recited in the claim and a determination of what structures have been disclosed in

-10-

FOR PUBLICATION

the specification that correspond to the means for performing that function." Epcon Gas Systems Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1032 (Fed. Cir. 2002).  The parties also agree that the function of the "guide means" recited in the claims is "for guiding said developer stored in said developer container to said mouth portion as said main body is rotated."  '662 Patent, Claim 5.

The parties dispute which structure described in the specification corresponds to the claimed functions.  Ricoh contends that the raised portion depicted as portion 85 in the specification of the '662 family of patents corresponds to the claimed function.  Defendants contend that the raised portion 85 *in conjunction* with raised portion 86 corresponds to the claimed function.

It is undisputed that raised portion 85 corresponds to the claimed function.  The '662 family patent specification states that the "raised portion 85 raises the toner to the edge of the mouth portion 23 as if it were a spoon."  '662 Patent, Col. 18, ll. 37-38.  The prosecution history of the '631 patent also explicitly states that "[t]he guide means shown in Figures 20-24 and described in the accompanying portion of the specification comprise a structure 85 which acts to lift toner from the cylindrical body to the mouth as the body is rotated and equivalent guide means must similarly guide the toner to the mouth portion by lifting the toner."  '631 Patent Prosecution History, Ex. 17, p.5.  This is a clear indication that the raised portion 85 is the structure that corresponds to the means for performing the function of guiding developer to the mouth portion.

-11-

FOR PUBLICATION

The Court finds that raised portion 86 is also part of the structure that corresponds to the "guide means" function.  The prosecution history of the '631 patent states that "[a]pplicants' disclosed structure 85-86 guides the toner by lifting the toner or raising the toner from the cylindrical wall to the mouth."  '631 Patent Prosecution History, Ex. 17, p.6.  Although the prosecution history of the '631 patent explicitly states that raised portion 85 is the "guide means", this is a clear indication that the raised portions 85 and 86 both perform the function of "raising the toner ... to the mouth."  Id.  The specification also states that "[t]he toner is guided by the raised portion 86 toward the outside of the bottle 20 in the direction L and then discharged via the mouth portion."  '662 Patent, Col.18, ll. 42-43.  This indicates that the function of the raised portion 86 is to guide the toner toward the outside of the bottle, and in doing so guides the toner to the mouth portion.

The parties also disagree as to whether a "spiral projection" is a structure that corresponds to the function of guiding toner to the mouth of the bottle.  A spiral projection would be a projection that extends around the shoulder of the bottle, extends in the direction of the mouth portion and ends at the mouth portion.  This spiral projection would have the function of guiding toner to the mouth portion.  Defendants argue that Ricoh expressly disclaims a spiral projection in the prosecution history of the '631 patent.  The Nakagawa patent, which Ricoh disclaimed when it applied for the '631 patent, teaches a spiral projection to push toner out of the bottle. The spiral projection of the Nakagawa patent extends around the interior of the body of the toner container, towards the mouth portion and pushes toner to the mouth portion.  The Nakagawa patent is distinguished because the '631 patent "guide means" lifts toner to the mouth of the

-12-

**FOR PUBLICATION**

bottle rather than pushing the toner as taught by the Nakagawa patent.  The prosecution history

does not specifically disclaim a spiral projection.

   Although the Court finds that a spiral projection has not been disclaimed in the

prosecution history, the spiral projection must be equivalent to the corresponding structure

disclosed in the specification to be within the scope of the "means plus function" limitation.  "In

writing a claim in means-plus-function form, a party is limited to the corresponding structure

disclosed in the specification and its equivalents."  Personalized Media Communications, LLC v.

Int'l Trad Comm'n, 161 F.3d 696, 703 (Fed.Cir.1998).  Here, a spiral projection is not an

equivalent to the raised portion 85.  Throughout the '662 family patent specification the structure

that corresponds to the function of lifting the toner to the mouth portion is raised portion 85.  In

the preferred embodiment, it is formed by a surface that has a concave shape which scoops toner

that is guided down the body of the bottle by the "guide groove" and lifts the toner to the mouth

portion.  "Claims written in the means-for form of §112  ¶ 6 do not, by virtue of this form,

acquire a scope as to the function beyond that which is supported in the specification, or as to the

structure beyond equivalents of that shown in the specification."  Multiform Desiccants, Inc. v.

Medzam, Ltd., 133 F.3d 1473, 1478 (Fed.Cir. 1998).  The specification does not indicate that the

raised portion 85 may be a spiral projection, nor is a spiral projection the equivalent of raised

portion 85, and it would be improper to expand the scope of the corresponding structure to

include a spiral projection.

   D.  Construction of Claim Terms Relating to "Ramp Surface" and "Toner Guide"

-13-

FOR PUBLICATION

The parties ask the Court to construe the following phrases related to "toner guide" and

"ramp surface" found in the '662 patent, the '631 patent and the '195 patent:

- "a circumferential and radially extending ramp surface configuration of the peripheral surface of said main body at said one end and connecting radially between said first diameter portion and a radial position no greater than said second diameter portion" ('662 patent, Claims 37 and 41)

- "a toner guide provided on said shoulder portion and extending radially toward said mouth portion" ('631 patent, Claim 6)

- "a ramp surface located adjacent to said first end of said hollow body, wherein said ramp surface extends radially into said hollow body to such a position that a toner in said toner bottle is raised to said toner discharge mouth by said ramp surface when said toner bottle is rotated" ('195 patent, Claim 2)

- "a ramp surface mounted on said toner discharge mouth, wherein said ramp surface extends radially to such a position that a toner in said toner bottle is raised to said toner discharge mouth by said ramp surface when said toner bottle is rotated" ('195 patent, Claim 4)

- "a ramp surface located adjacent to said first end of said hollow body, wherein said ramp surface extends radially into said hollow body to such a position that a toner in said toner bottle is raised to said toner discharge mouth by said ramp surface when said toner bottle is rotated about an axis of said hollow body" ('195 patent, Claims 5, 16, 20, 24, 27)

- "a toner guide mounted on said mouth portion, wherein said toner guide extends radially from said mouth portion" ('195 patent, Claims 7, 8, 29, 30, 31)

- "a toner guide" ('195 patent, Claim 11)

Ricoh contends that a "toner guide" and "ramp surface" is a structure that toner slides

down to reach the mouth portion of the bottle.  Ricoh also contends that "radial" means

"characterized by divergence from or toward the axis [or mouth] of the container." JCCS at 4.

Defendants' proposed construction is that the "ramp surface" and "toner guide" extend along a

radius or ray as do structures 85 and 86 in the specification.  Defendants also argue that

-14-

FOR PUBLICATION

"radially" means along a radius or ray.  JCCS at 4.  Ricoh and Defendants also disagree as to the construction of "end," however the Court already construed this term in connection with the term "shoulder" and will not repeat its analysis here.

Although a dictionary may aid in determining the ordinary meaning of claim terms, "radial" has multiple definitions.  Ricoh bases its construction on a definition of "radial" meaning "converging or diverging from a center," whereas Defendants base their construction on the definition "along a radius or ray." *Webster's Third* at 913.  The Court looks to the intrinsic evidence, in this case the prosecution history, to determine the meaning of "radial" adopted by the patentee when drafting the patent.  The prosecution history of the '631 patent distinguishing the Nakagawa patent states "[t]he reference to Nakagawa has no showing of a toner guide which extends radially toward the mouth portion."  '631 Patent Prosecution History, Ex. 17, p. 6.  This indicates that the patentee is adopting the definition of "radial" meaning center seeking, in this case, the mouth portion is the central portion of the container and the focal point toward which the "ramp surface" and the "toner guide" extend.  The Court finds that the term "radially" in relation to "toner guide" and "ramp surface" means approaching the center of the bottle.

Ricoh claims that the "ramp surface" and "toner guide" are any structure that scoops the toner to a position above and toward the bottom of the mouth.  Ricoh also claims that the "ramp surface" and "toner guide" extend simultaneously around the container (circumferentially) and toward the mouth of the container (radially), thereby including spiral projections.[1]  Ricoh argues

---

[1]Only claims 37 and 41 of the '662 patent claim describe both a ramp surface that extends "circumferentially" and "radially" extending ramp.  Other claims relating to "toner guide" and "ramp surface" that the parties ask the Court to construe disclose only a "radially" extending

-15-

**FOR PUBLICATION**

that although the preferred embodiments described in the specification only depict a surface that extends slightly in the circumferential direction, it does not limit the possibility of the surface extending further as to form a spiral projection.

This Court is not convinced by Ricoh's argument that a spiral projection follows from the claims and intrinsic evidence regarding "ramp surface" and "toner guide." Although the claim language in at least two claims discloses a surface that may extend in the circumferential direction, while simultaneously extending in the radial direction, the specification does not describe such a surface nor is there an indication that such a surface is envisioned as a preferred embodiment. Nor does the Court find that a spiral projection is a logical or obvious extension of the disclosed embodiment of the spoon like surface. It is clear from the patent specification and the prosecution history of the '662 family of patents that the novelty of the "toner guide" and "ramp surface" is the way in which they lift the toner to the mouth portion. A spiral projection would not perform this function of lifting or scooping the toner to the mouth portion but would rather push the toner, and therefore is not within the scope of the "toner guide" and "ramp surface."

The parties also ask the Court to construct the following phrase relating to "toner guide" in the '195 patent.

- "Wherein said toner container has a toner guide provided at a position to guide the toner toward said opening when said toner container is rotated about said axis of rotation of said toner container" ('195 patent, Claim 22)

---

ramp surface.

FOR PUBLICATION

The parties disagree as to whether the term "toner guide" in claim 22 of the '195 patent is a "means plus function" element under 35 U.S.C. § 112 ¶ 6. "The failure to use the word 'means' in a claim element create[s] a rebuttable presumption that 35 U.S.C. § 112 ¶ 6 does not apply... This presumption can be rebutted when the claim element recites a function without sufficient structure to perform that function." Personalized Media, 161 F.3d at 696. Defendants argue that "toner guide" in the context of claim 22 is described purely in functional terms, and does not recite a structure sufficient to perform his function. Ricoh, however, argues that "toner guide" is not a "means plus function" element because it recites a specifically definite structure, a "guide." Ricoh contends that the term "guide" is a structural element obvious to one skilled in the art of toner bottles, and that the claim further indicates the location of the guide, "a position to guide the toner toward said opening." '195 Patent, Claim 22. A relevant definition of "guide" is "a contrivance for directing the motion of something: esp: such a contrivance (as in a tool) having a directing edge surface, or channel." Webster's Third at 1009. The Court accepts Ricoh's argument and finds that the term "toner guide," specifically the term "guide" defines a sufficient structure. "Guide" as used in the context of the '195 patent is a directing surface, to perform the function of "guid[ing] toner toward said opening." '195 Patent, Claim 22. Therefore, the Court finds that Defendants do not overcome the presumption that "guide means" is not a "means plus function" limitation.

E.    Construction of Claim Terms Relating to "Lug"

The parties ask the Court to construe the following phrases related to a "lug" protrusion of a developer container:

**FOR PUBLICATION**

- • "a lug protruding from one side of said body" ('963 patent, Claim 1)

- • "lug protrudes substantially from a center of said lid" ('963 patent, Claims 3 and 4)

Ricoh contends that the term "lug" describes a protrusion from one side of the developer lid's body.  Ricoh also contends that "center" means the middle part of the lid in contrast to sides, boundaries, outskirts, circumference or peripheral features, and that the "lug" does not have to start from the center of the bottom wall of the lid.  Defendants argue that these claims mean the "lug" must protrude from the bottom wall of the lid, and that "center" means that the "lug" must start from a center (or substantially the center) of the bottom wall of the lid.  See JCCS at 6.  Defendants also contend that the "body" of the lid exclusively refers to the bottom side of the lid, not including the circular side that extends up from the lid bottom.  The definition of "body" proposed by Defendants is "the trunk (as of a person, animal, plant) without appendages: the main, central or principal part of something."  *Webster's Third* at 246. Defendants label the side extending up from the bottom an appendage, and as such not part of the "body."

The Court is not persuaded by Defendants' application of this definition.  The side-wall of the lid is not an appendage as argued by Defendants, it is a principal part of the lid of the developer container.  The Court finds that the ordinary meaning of the word "body" in the context of claim 1 of the '963 patent includes the side of the lid extending from the bottom. Together with the bottom, the side forms "the main, central, or principal part" as "body" is defined by Webster's Dictionary.

-18-

FOR PUBLICATION

Claim 1 of the '963 patent provides that a "lug" protrudes from "one side of said body," which suggests that the lug must have a singular surface of origin. This does not necessarily mean, as Defendants contend, that the "lug" must protrude from the bottom wall of the lid. Although the specification discloses embodiments in which the lug protrudes from the center of the bottom portion of the lid, this does not limit the broad language of the claim. "[P]articular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." Rhine v. Casio, 183 F.3d 1342, 1346 (Fed.Cir. 1999) (citing Electromed Systems S.A. v. Cooper Life Sciences, 34 F.3d 1048, 1054 (Fed.Cir. 1994). Here, the language of claim 1 is broader than the embodiments described by the specification, and although the claim states that the lug protrudes from one side of the body of the lid, it does not limit which side of the body the "lug" may protrude from.

Claims 3 and 4 of the '963 patent provide the limitation that the "lug" protrude from the "center" of the lid. The Court finds that the plain meaning of "center" in claims 3 and 4 is the middle part of the lid "in contrast to the sides, boundaries, outskirts, circumference of peripheral features." Webster's Third at 362. However, the Court is not convinced by Ricoh's argument that the "lug" does not have to start from the center of the bottom wall of the lid. It would be inconsistent for the lug to originate from a singular side of the body of the lid (as taught by claim1) and also from the center of the lid, but not the bottom wall. These two limitations are only satisfied when the lug protrudes from the center of the bottom wall of the lid.

Claims 3 and 4, although dependent on independent claim 1, do not limit the breadth of claim 1. The doctrine of claim differentiation "normally means that limitations stated in

-19-

FOR PUBLICATION

dependent claims are not to be read into the independent claim from which they depend." Karlin

Technology, Inc. v. Surgical Dynamics, Inc., 177 F.3d 968 (Fed. Cir. 1999) (citing Transmatic,

Inc. v. Gulton Indus., Inc., 53 F.3d 1270. 1277 (Fed. Cir. 1995).  Although claims 3 and 4

provide for a lug that protrudes from the bottom side of the body of the lid, these limitations are

not limiting on the breadth of claim 1, which provides for a lug protruding from a singular side of

the body.

       F.    Construction of Claim Terms Relating to "Bottom"

The parties ask the Court to construe the following phrase related to "bottom" or "bottom

portion" contained in claim 15 of the '935 patent:

    •    "a bottom portion with which an end of said body is closed" ('935 patent, Claim 15)

Ricoh argues that "bottom" means the lower part or region of the bottle.  Defendants

argue that the "bottom portion" means the underside, or the portion on which the bottle normally

stands or rests.

When making a claim construction determination, a court should presume that the terms

in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary

and accustomed meaning of claim terms.  See Johnson Worldwide, 175 F.3d at 989.  Claim 15

discloses "a bottom portion with which an end of said body is closed" and a spiral groove

"extending from a side of said bottom portion."  '935 Patent, Claim 15, Col. 25 ll. 44-45.  Ricoh

contends that this claim language suggests that the "bottom portion" does not completely exclude

the sides of the body portion

FOR PUBLICATION

The Court finds that Ricoh has misinterpreted the specification's description of "bottom portion." The language of claim 15 clearly discloses a "spiral groove" that extends in the inner side of the body from the bottom portion toward the port portion. The patent specification states that the spiral groove starts on the side of the container at the bottom portion. Ricoh argues that therefore the side of the container at the bottom portion is part of the bottom portion. The Court is not persuaded by this argument. According to the language of the claims, the "spiral groove" is formed in an inner wall of the body extending from a side of the bottom portion. The spiral groove is located in the inner wall of the body, not the "bottom portion" as argued by Ricoh.

Ricoh also cites to the specification describing a "convex outer circumferential portion 38-2a which is formed in the bottom portion." '963 Patent, Col. 19, ll. 12-13 (emphasis added). Ricoh argues that this "convex outer circumferential portion" is in the bottom portion and therefore part of the "bottom portion." Defendants agree that the "convex outer circumferential portion" is part of the "bottom portion" because it is the portion on which the bottle stands or rests. However, Ricoh and Defendants disagree as to whether the "groove formed between the convex outer circumferential portion and the body portion" described in the specification is part of the "bottom portion." '935 Patent, Col. 19 ll. 22-23. Ricoh claims that this language clearly suggests that this "groove" is part of the "bottom portion." Defendants disagree, and claim that the specification indicates that this portion is between the body and the "outer circumferential portion" and therefore not part of the "bottom portion."

Defendants contend that the term "bottom portion" is the surface on which the bottle normally stands or rests. Defendants refer to Webster's Dictionary, which defines "bottom" as:

-21-

FOR PUBLICATION

1. the under surface as opposed to the top surface; the side lying underneath; underside (the bottom of a box) (the bottom of a plank); *specif*; the underside on which a thing normally stands or rests (the bottom of a vase). *Webster's Third* at 259. Defendants liken a bottle to a vase, and adopt the definition pertaining to vase for bottle. Defendants also cite to a portion of the specification that describes a "concave portion 153e <u>in</u> the bottom part of the toner bottle 38." <u>'963 Patent</u>, Col 23, ll. 25-26 (emphasis added). Defendants argue that if the "bottom portion" was not solely the surface on which the bottle stood, the specification would state that projections extend <u>from</u> the bottom rather than describing a concave portion <u>in</u> the bottom portion. The Court is not convinced by this argument because the specific language of the claims states that the "bottom portion" is the portion of the bottle that closes the cylindrical body of the bottle. The Court finds that the claim language is clear that the bottom portion is the portion that closes the cylindrical body of the bottle and is not limited to the bottom surface of the bottle on which the bottom stands or rests.

In sum, the Court finds that the claim language clearly states that the "bottom portion" is the portion of the bottle abutting the cylindrical body of the bottle, which closes the cylindrical body of the bottle. The "spiral groove" is part of the body of the bottle. The claim language clearly states that the spiral grooves are formed on the inside of the "body portion" and extend from the side of the "bottom portion." This suggests that the bottom portion starts at the end of the body portion and that the spiral grooves are located on the body, not the bottom. According to a preferred embodiment in the specification, the "convex outer circumferential part" and the

-22-

**FOR PUBLICATION**

"groove" between the "convex outer circumferential part" close the end of the bottle.  Therefore

these two portions are part of the "bottom portion" of the bottle.

      G.     <u>Construction of Claim Terms Relating to "Projections"</u>

      The parties ask the Court to construe the following phrase relating to "projections"

contained in claim 15 of the '935 patent:

> •    "projections extending in a longitudinal direction of said toner bottle and formed
> to communicate a rotational force to said toner bottle on an outer surface of said
> bottom portion and away from a line of central axis of said cylindrical body."
> ('935 patent, Claim 15)

      Defendants' proposed construction of this claim language is that the projections must

extend from the portion of the bottle on which it stands or rests and originate at a position away

from the center of the bottom portion of the bottle.  Defendants argue that the only way of

communicating a rotational force to the bottom of the bottle that would make sense is for the

projections to be on the bottom.  Defendants also contend that Ricoh has disclaimed toner bottles

with projections on surfaces other than the bottom in the patent specification.  In the background

section of the '935 patent, Ricoh distinguishes a toner bottle with projections that extend from

the shoulder portion of the bottle.  <u>See</u> <u>'935 Patent</u>, Col 2 ll. 35-41.  Contrary to Defendants'

argument, it does not follow from the '935 patent specification that to disclaim a toner bottle

with a protrusion on the shoulder disclaims all protrusions not originating from the bottommost

surface.  Defendants also note that the specifications only depict protrusions that originate from

the bottom surface of the bottle.

      Ricoh contends that the part of claim 15 relating to projections does not limit the

projections to those extending exclusively from the bottom portion.  Ricoh claims that the phrase

**FOR PUBLICATION**

"away from a line of central axis" means that the protrusions extend away from that central axis of the bottle.  '935 Patent, Claim 15, Col. 25, ll. 53.  This, however, is contrary to the first line of the claim paragraph, which states that the projections extend in the longitudinal direction, which in this case is the axial direction.  Ricoh also contends that the phrase "on an outer surface of said bottom portion" modifies the communication of the force, not the location of the projections.  Ricoh argues that this language does not limit the claim to mean that the projections are formed on an outer surface of the bottom portion.  Ricoh further contends that since the phrase is closer to "communicate" than "formed," it modifies "communicate."  The Court finds that the phrase modifies the communication of the force rather than the projection, and the use of the word "communicate" indicates that the protrusions are in direct contact with an outer surface of the bottom portion.  However, this construction does not require that the projections protrude from the bottommost surface of the bottle, but requires that it protrude from any outer surface of the bottom portion of the bottle.

The Court finds that the last paragraph of claim 15 discloses projections that extend in the longitudinal direction of the bottle, i.e. in the axial direction.  The plain language of the claims, and the supporting specification make this limitation clear and unambiguous.  The projections are formed away from a line of central axis of the cylindrical body.  Specifically, the Court looks to the specification Example A: "In a position outside the bottom portion and away from a cylindrical central-axis line ... there are formed projections ... in the axial direction."  '935 Patent, Col. 16 ll. 59-63.  This supports the interpretation that the phrase "away from a line of a central axis" describes the location of the projections, not the direction in which they extend.  The

**FOR PUBLICATION**

disputed claim language states that the projections extend in an axial or longitudinal direction but

originate away from the central axial line of the bottle.

The claims also state that the projections are formed to communicate a rotational force to

the toner bottle, and this force is communicated to the toner bottle on an outer surface of the

bottom portion.  The Court is not persuaded by Defendants' argument that the language of claim

15 limits the '935 patent coverage to protrusions that extend longitudinally from the bottom

surface of the bottom portion of the bottle.  The claim language specifically states that the

projections are "formed to communicate a rotational force to said toner bottle on an outer surface

of said bottom portion."  <u>'935 Patent</u>, Claim 15, Col. 25 ll. 51.  As discussed, the "bottom

portion" is not limited to the undermost surface of the bottle.  The use of the word

"communicate" suggests that to transfer the rotational force, the projection is in direct contact

with an outer surface of the bottom portion.  Neither this claim language, nor the specification

describing the preferred embodiments limits the projections from extending exclusively from the

undermost surface of the bottom portion.  It is clear from the language of the claims and the

specification that the projections extend in the axial direction from points away from the central

axis and originate from <u>any</u> outer surface of the bottom portion.

    H.    <u>Photocopier Parts</u>

The parties also ask the Court to determine whether and to what extent the recitation of

photocopier parts in a claim's preamble that do not constitute the claimed lid are limiting.  One

claim in dispute, claim 1 of the '963 patent reads:

    1.  A lid to selectively plug or unplug a discharge mouth of a developer container
       mounted to an image forming apparatus for replenishing a developer, said lid comprising:

FOR PUBLICATION

> a body, and
> a lug protruding fro one side of said body, said lug facing outward from said developer container when said lid plugs said discharge mouth.

('963 patent, claim 1).  The preamble, "a lid to selectively plug or unplug a discharge mouth of a developer container mounted to an image forming apparatus for replenishing a developer," describes the purpose of lid and describes the interaction of the lid with the developer container and the image forming apparatus.  Id.  Ricoh argues that the claimed lid is defined in relation to the parts they are intended to interface with, but the asserted claims do not require the physical presence of those parts.  Katun, Nashua and GTI propose that the structural recitations of the image forming apparatus are limiting.  Generally a preamble is not limiting on an invention "where the patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention."  Rowe v. Dror, 112 F.3d 473 (Fed.Cir. 1997).  However, "[n]o litmus test can be given with respect to when the introductory words of a claim, the preamble, constitute a statement of purpose for a device or are, in themselves, additional structural limitation of a claim ... The effect preamble language should be given can be resolved only in a review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."  Corning Glass Works v. Sumitomo Electric U.S.A., Inc., 868 F.2d 1251, 1257 (Fed.Cir. 1989).

The Court finds that the preamble of claim 1 of the '963 patent is limiting.  In In re Stencel, the plaintiff Stencel appealed a judgment by the PTO Board of Patent Appeals, which rejected his patent application for obviousness.  828 F.2d 751 (Fed.Cir. 1987).  Stencel's application was for a driver which when inserted into a collar and turned would lock the collar

FOR PUBLICATION

and a hexagonal bolt together.  Stencel based the novelty of his driver on grounds that the prior

art did not teach a driver for use with his unique collar.  The Federal Circuit accepted Stencel's

argument and held "that the framework – the teachings of the prior art – against which

patentability is measured is not all drivers broadly, but drivers suitable for use in combination

with this collar, for the claims themselves are so limited."  Id. at 752.  The Federal Circuit also

found that "Stencel is not inhibited from claiming his driver, limited by the statement of its

purpose, and further defined by the remaining clauses of the claims at issue, when there is no

suggestion in the prior art of a driver having the claimed structure and purpose."  Id. at 755

(emphasis added).  This Court adopts the rationale of In re Stencel and finds that the lid claimed

in the '963 patent is limited by the statement of its purpose, "to plug and unplug the discharge

mouth of a developer container mounted to an image forming apparatus."  '963 Patent, Claim 1.

　　　　The Court also finds that the preamble of claim 1 of the '963 patent is limiting because it

gives life and meaning to the lid further described in the body of the lid.  In Pitney Bowes, Inc. v.

Hewlett-Packard Co., the Federal Circuit found a preamble was not limiting because the "body of

the claim[s] fully and intrinsically sets forth the complete invention, including all of its

limitations, and the preamble offers no distinct definition of any of the claimed invention's

limitations but rather merely states ... the purpose or intended use of the invention."  182 F.3d

1298, 1305 (Fed.Cir. 1999).  Here, the preamble offers a distinct definition of the type of lid

being claimed.  It adds the limitation that the lid is to be used for plugging and unplugging a

developer container.  The preamble also states the specific environment in which the lid is to be

FOR PUBLICATION

used, an image forming apparatus.  The Court finds that these limitations are "necessary to give

life, meaning and vitality to the claim."  Id.

      Although the Court finds that the preamble to claim 1 of the '963 patent is limiting, the

'963 patent claims solely a lid, and not a combination of lid, container and imagine forming

apparatus.  The presence of the lid, bottle and imagine forming apparatus are not required.  In

Smith Corona Corp. v. Pelikan, Inc., a manufacturer of typewriters and typewriter ribbons filed

suit against Pelikan, a manufacturer of replacement typewriter ribbons.  784 F.Supp. 452

(M.D.Tenn. 1992), aff'd in unpublished opinion, 1 F.3d 1252 (Fed. Cir. 1993).  The court in

Smith Corona interpreted In re Stencel to mean "patentability can be predicated upon how a

claimed item mates with another item without claiming the combination of two items" and found

that an applicant may define and limit an invention in terms of that invention's intended

environment without claiming the environment as part of a combination with the invention.  Id.

at 463.  The Smith Corona court determined that the patent at issue described "a device in terms

of the structure imposed upon it by its intended environment and desired function" and that the

patent claims did "not claim all typewriter ink ribbon cassettes broadly, but ink ribbon cassettes

designed to function in the described environment of compatible correction cassettes and

typewriter switches."  Id.  Here, the '963 patent claims in dispute do not claim all bottle lids

broadly.  The preamble clearly states, and it is reflected throughout the patent specification and

prosecution history, that what is claimed is solely a lid, specifically designed to function with

developer containers to be used in the environment of the image forming apparatus.  Similar to

the printer ribbon in Smith Corona, claimed in the context of the other printer parts, here the lid

**FOR PUBLICATION**

is claimed in relation to the environment of the bottle and the image forming apparatus.  The

'963 patent does not claim a combination of lid, container, and image forming apparatus.

The Court finds that the preamble of claim 1, "[a] lid to selectively plug or unplug a

discharge mouth of a developer container mounted to an image forming apparatus for

replenishing a developer" is a functional description of the lid whose structure is further

described in the body of the claim.  '963 Patent, Claim 1.  The Court also finds that this preamble

limits the scope of use of the lid and encompasses lids that can selectively plug and unplug the

"discharge mouth" of a developer container when mounted to an imaging forming apparatus.

The bottle and image forming apparatus mentioned in the preamble describe the environment in

which the claimed lid is to be used, but are not claimed in combination with the lid.

The parties make the same arguments about whether and to what extent the preamble of

claims 1, 37, and 41 of the '662 patent are limiting.  The preamble of a typical claim in dispute,

claim 1 of the 662 patent reads:

> 1.  A developer container for use with a developer replenishing device having
> holding means for holding said developer container to allow a developer to be
> discharged from said developer container into said developer replenishing device,
> and driving means for causing said developer container held by said holding
> means to rotate about an axis of said developer container, said developer container
> having a hollow cylindrical main body comprising: ('662 patent, Claim 1).

The Court applies the analysis of claim 1 of the '935 patent to claims 1, 37, and 41 of the

'662 patent.  Applying the rationale of In re Stencel, the Court finds that the container claimed is

"limited by the statement of its purpose, and further defined by the remaining clauses of the

claims at issue, when there is no suggestion in the prior art" of a container having the claimed

structure and purpose."  In re Stencel, 828 F.2d at 755.  The Court finds that the recitation of

-29-

**FOR PUBLICATION**

photocopier parts and the description of the interaction between the claimed container and the parts limit the scope of the claimed container to the specific environment. These limitations are "necessary to give life, meaning and vitality to the claim." Pitney Bowes, 182 F3d at 1305.

The Court finds that although the preambles of the claims are limitations, the parts described therein are not claimed as a combination with the developer container. Here, the '662 patent claims do not claim all developer bottles broadly. The preamble clearly states, and the patent specification and prosecution history reflect, that what is claimed is solely a container, specifically designed to function with the various photocopier parts in the environment of the image forming apparatus. Similar to the typewriter ribbon in Smith Corona, here the developer container is claimed in relation to the environment of the image forming apparatus, and not in combination with the photocopier parts.

     I.    Developer

The claim term "developer" is a term of art in the xerographic industry. Ricoh argues that developer is "charged particles for developing a latent image," and that the terms "developer" and "toner" are used interchangeably. JCCS at 7. Defendants argue that developer is a mixture of toner and carrier, and that the two terms "developer" and "toner" have distinct meanings and are used selectively throughout the patents. The Court places a heavy presumption in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art. See Johnson Worldwide, 175 F.3d at 989. However, this presumed ordinary and accustomed meaning may be overcome where the patentee has chosen to become his own lexicographer. See id. at 990. When a patentee has become his own lexicographer the term may be expressly or

FOR PUBLICATION

implicitly defined, and the specification is dispositive in defining the disputed term.  "[I]n other words, the specification may define claim terms 'by implication' such that the meaning may be 'found in or ascertained by a reading of the patent document.'" Bell Atl. Network Serv. Inc. v. Covad Comm. Group, Inc., 262 F.3d 1258 (Fed.Cir. 2001) (citing Vitronics, 90 F.3d at 1582). Although, "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in the separate claims," here the Court finds that the inventor clearly equates the terms "developer" and "toner" throughout the patent specification and prosecution history. United States v. Telectronics, 857 F.2d 778, 783-84 (Fed.Cir. 1988).  The specification of the '662 patent states "the bottle holder 21 plays the role of holding means for holding a toner bottle, or developer container 20." '662 patent, Col 6  ll. 30-31.  The specification also consistentently describes the bottle as holding toner, for example, "as shown, the amount of toner left in the bottle 20 depends on the rotation speed. '662 patent, Col. 19  ll.13-15.  In the summary of the preferred embodiments, the container is once again refered to as a "developer container." See '662 patent, Col. 24  ll 20- 68.  This Court finds that throughout the specification patents at issue, the terms "toner" and "developer" are used synonymously and interchangeably, and mean "charged particles for developing a latent image."  JCCS at 7.

## SUMMARY JUDGMENT

### I.      Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

FOR PUBLICATION

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Chippollini v.

Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) (en banc), cert. denied, 483 U.S. 1052 (1987). In

deciding a motion for summary judgment, a court must construe all facts and inferences in the

light most favorable to the nonmoving party. Boyle v. Allegheny, Pa., 139 F.3d 386, 393 (3d Cir.

1998). The moving party bears the burden of establishing that no genuine issue of material fact

remains. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). It is well-settled that the issues in a

patent case are subject to summary judgment. See Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,

853 F.2d 1557, 1561 (Fed.Cir. 1988).

>   The Supreme Court has stated that in evaluating a motion for summary judgment:

>>   The judge must ask . . . not whether . . . the evidence unmistakably
>>   favors one side or the other but whether a fair-minded jury could
>>   return a verdict for the [nonmovant] on the evidence presented.
>>   The mere existence of a scintilla of evidence in support of the
>>   [nonmovant's] position will be insufficient; there must be evidence
>>   on which the jury could reasonably find for the [nonmovant]. The
>>   judge's inquiry, therefore, unavoidably asks whether reasonable
>>   jurors could find by a preponderance of the evidence that the
>>   [nonmovant] is entitled to a verdict. . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A fact is "material" only if it will

affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is

"genuine" if the evidence is such that a reasonable fact finder could return a verdict for the

nonmoving party. See id.

>   In order to survive a motion for summary judgment, a nonmovant must present more than

a mere scintilla of evidence in his favor. Id. He cannot simply reassert factually unsupported

allegations contained in his pleadings. See Celotex, 477 U.S. at 325; Clark v. Clabaugh, 20 F.3d

FOR PUBLICATION

1290, 1294 (3d Cir. 1994).  Further, only evidence that would be admissible at trial may be used

to test a summary judgment motion; evidence with a deficient foundation must be excluded from

consideration.  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989).

II.    **Analysis**

      A.    Validity of the '963 Patent

Defendants move for partial summary judgment on the invalidity of the '963 patent, and

Ricoh cross moves for partial summary judgment on the "no invalidity" of the '963 patent.  For

the reasons discussed below, Defendants' motion is denied and Ricoh's motion is granted.

Under 35 U.S.C. § 282, a patent is presumed valid.  Ricoh does not have the initial

burden to submit evidence supporting the validity of its patent, but rather Defendants must

"establish facts, by clear and convincing evidence, which persuasively lead to the conclusion of

invalidity."  Avia Group, 853 F.3d at 1562.   Defendants argue that summary judgment of

invalidity is appropriate because they have demonstrated clearly and convincingly that the '963

patent was anticipated by Japanese Kokai Patent Application No. Sho 60(1985)-243681 issued to

Matsushita (the "Matsushita patent") and United States patent No. 3,318,496 issued to Ayotte

(the "Ayotte patent").

A patent is invalid as anticipated if "the invention ... was described in a printed

publication in this or a foreign country ... more than one year prior to the date of the application

for the patent in the United States."  35 U.S.C. § 102(b).  A patent issued by the PTO or a foreign

patent authority satisfies the requirements of §102(b) if it was issued at least one year before the

challenged patent was sought.

-33-

**FOR PUBLICATION**

To invalidate an existing patent, a single prior publication must contain all of the essential limitations of each claim. Defendants must show that "each element of the claim in issue is found in a prior patent or publication, either expressly or under principles of inherency." Tyler Refrigeration v. Kysor Indus. Corp., 777 F.2d 687, 689 (Fed.Cir. 1985). Inherency occurs when the invention described by the prior art necessarily functions in accordance with a claim limitation, even if the limitation is not expressly mentioned in the art. See generally, Robert Harmon, *Patents and the Federal Circuit* §3.2 (4th Ed. 1999). The prior art need not present the invention in a positive light, so long as all claims are explicitly or inherently contained in the publication. See Celeritas Tech Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1361 (Fed.Cir. 1998). The invention as disclosed by the prior art, however, must be described so as to "enable" one skilled in the art to (1) identify all claim limitations and (2) create the invention." Brystol-Meyers Squibb Co. v. Boehringer Ingelheim Corp., 86 F.Supp.2d 433 (D.N.J 2000).

An anticipation analysis requires a two-step process. The first step is claim construction. The Court constructed the claims of the patents-in-suit in the first section of this opinion. The second step requires the Court to compare the properly constructed claims with the subject matter described in the prior art reference and identify the elements disclosed in the allegedly anticipating reference. See e.g., Helifex Ltd., v. Blok Lok, Ltd., 298 F.3d 1339 (Fed.Cir. 2000). Claim anticipation in prior art is finding of fact. See Titanium Metals Corp. v. Banner, 778 F.2d 775, 780 (Fed.Cir. 1985). Defendants' motion, then, can only be granted if there are no genuine disputes of material fact as to whether the processes described in any one of the articles submitted anticipate the patents' claims.

-34-

FOR PUBLICATION

The Matsushita Patent

The Matsushita patent discloses a "toner replenishing device" with a cylindrical hollow vessel of which both ends are sealed, and a lengthwise opening in the outer surface of the cylindrical body.  When the vessel is rotated to the correct position, the toner contained within the cylindrical body may spill from a lengthwise opening.  A removable seal closes the lengthwise opening of the toner bottle, and is removed before the "toner replenishing device" is used.  The specification also discloses a cap to seal one end of the cylinder after the hollow vessel is filled with toner.  A protrusion extends from the center exterior of the cap, and extends longitudinally from the cap.  A removable tab is fitted to the end of the protrusion, which is meant to be grasped and pulled upward when exchanging the hollow vessel.  The cap is the portion of the Matsushita patent that Defendants claim anticipates the '963 patent.  Although the cap disclosed in the Matsushita patent does look similar to the lid disclosed in the '963 patent, the purpose of the Matsushita cap is to seal the end of the vessel after it is filled with toner.  Also, the protrusion of the Matsushita patent is formed to be "in communication" with the removable tab, and the purpose of the tab is simply to aid in removing the vessel once it is spent.

In light of the Court's construction of the '963 patent claim 1, it finds that the Matsushita patent does not anticipate the '963 patent.  The Court must compare the properly constructed claims to the allegedly anticipating prior art.  To invalidate an existing patent, the Court must find that "a single prior publication" contains "all of the essential limitations of each claim."  See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1554 (Fed.Cir. 1995).

-35-

FOR PUBLICATION

As discussed, the Court finds that the preamble of the '963 patent claims is limiting. The patentability of the lid is based upon how the lid mates with the developer bottle and how it is in communication with the image forming apparatus. The preamble presents the functional limitations that the lid selectively plugs and unplugs the discharge mouth of a developer bottle, and it may do so while the developer bottle is mounted in an image forming apparatus. The Matsushita patent does not teach a lid with the functional limitations of the '963 patent. Although there are minor structural differences between the '963 lid and the Matsushita cap, the main difference lies in the functional limitations created in the preamble of the '963 patent. The Matsushita lid does not plug the discharge mouth of the developer container, as the discharge mouth of the Matsushita container is a longitudinal opening on the side of the bottle. Instead, the Matsushita cap seals an end of the developer bottle once it is filled with toner. Also, unlike the lid of the '963 patent, the Matsushita cap cannot selectively plug or unplug the container while mounted to an image forming device. The Court finds that the Matsushita patent does not disclose limitations present in the claims of the '963 patent and therefore does not anticipate the lid of the '963 patent.

The Ayotte Patent

The Ayotte patent discloses a device for dispensing liquids, powders, or the like, and more particularly for containers with dispensing plugs positioned in the neck or outlet end of the container. The Ayotte patent discloses a one piece insert plug that has a flat, circular base portion, a tapered outer layer wall that extends upwardly and radially outward from the base portion, and a flange-like wall portion that extends from the top of the outer wall. In addition, a

-36-

**FOR PUBLICATION**

tubular outlet protrudes from the base portion.  A narrow opening is located through the base

portion and extends up through the tubular outlet.  This tube-like outlet allows the contents of the

bottle to pour out.  The plug alone does not seal off the outlet of the bottle, rather, the plug in

conjunction with a closure cap completely seals the bottle.  The purpose of the plug is not to seal

the bottle, but is a way to partially close the bottle and allow the contends of the bottle to be

emptied in a controlled manner through the tube-like outlet.

 As said, the Court finds that the preamble to claims 1 through 5 of the '963 is limiting in

the sense that the patentability of the lid is predicated on how it integrates with a developer

container and image forming apparatus.  To anticipate the lid claimed in the '963 patent, the

Ayotte patent must teach each and every limitation of the '963 claim.  The Ayotte patent does not

disclose a lid for use with a developer container to be mounted to an image forming apparatus.

Nor does the Ayotte patent teach a lid that selectively plugs and unplugs a discharge mouth of a

developer container that is mounted to an image forming apparatus.  The Ayotte patent does not

disclose the limitations present in the claims of the '963 patent and therefore does not anticipate

claim 1 of the '963 patent.

 Because the Court finds that the Matsushita and Ayotte patents do not anticipate the '963

patent, Defendants' motion for summary judgment on the invalidity of the '963 patent is denied.

Moreover, because Defendants do not put forth any other reasons why the '963 patent would be

invalid, they have not overcome the statutory presumption of validity established in 35 U.S.C. §

102(b).   It follows then that Ricoh's cross-motion for summary judgment of "no invalidity" is

granted.

**FOR PUBLICATION**

    B.      <u>Infringement of the '963 Patent</u>

Ricoh moves for partial summary judgment on the issue of whether Defendants'

replacement bottles infringe on the '963 patent, which describes a lid for toner bottles.  Katun,

independently and with GPI and Nashua, develops its own toner bottles and lids.  GPI

manufactures and sells to Nashua two of the toner bottles at issue in this case.  Nashua purchases

those toner bottles and lid from GPI, and itself oversees the manufacture of certain of the other

toner bottles and lids at issue.  Nashua then labels the bottles, fills them with toner, and sells the

bottles and lids to Katun.

    There are three categories of plug-type bottle lids that are at issue by Ricoh's motion: (1)

Katun lids found on Katun toner bottles; (2) original GPI lids found on GPI bottles and on some

Katun bottles; and (3) new GPI lids.  Ricoh argues that the Katun and original GPI lids infringe

on claims 1 through 5 of the '963 patent.  Ricoh also argues that the new GPI lids infringe on

claims 1, 4 and 5 of the '963 patent.

    "To establish literal infringement, every element set forth in a claim must be found in an

accused product, exactly."  <u>Southwest Techs., Inc. v. Cardinal IG Co.</u>, 54 F.3d 1570, 1575

(Fed.Cir. 1995).  A patent infringement analysis involves two steps.  The first step is claim

construction, a question of law.  <u>See</u> <u>Vitrionics</u>, 90 F.3d at 1582.  The Court has construed the

relevant claim terms in the first part of this opinion.  The second step is the comparison of the

properly construed claims to the product accused of infringement.  This is a question of fact.  <u>See</u>

<u>Markman</u>, 517 U.S. at 384.  The claim language is illuminated by the written description and the

prosecution history.  <u>See</u> <u>Pitney Bowes</u>, 182 F.3d at 1309.  Although the question of infringement

FOR PUBLICATION

is usually one for a jury, summary judgment of infringement may be granted when a rational jury

could only conclude that infringement has occurred.  See Karlin Tech., 117 F.3d at 974

(reversing summary judgment of non-infringement and granting judgment of infringement

because no reasonable jury could determine that any claim limitation was absent from the

accused device).

Ricoh claims that Defendants' products "literally infringe" its '963 patent.  Literal

infringement of a claim exists when every limitation recited in the claim is found in the accused

device, that is, when the properly construed claim reads on the accused device exactly.  Amhil

Enterprises v. Wawa, Inc., 81 F.3d 1554, 1562 (Fed.Cir. 1996).  In its claim construction

analysis, the Court found that the preamble to claim 1 of the '963 patent was limiting because it

describes how the lid mates with the developer bottle and how it is "in communication" with the

image forming apparatus.  The preamble presents the functional limitations that the lid

selectively plugs and unplugs the discharge mouth of a developer bottle, and it may do so while

the developer bottle is mounted in an image forming apparatus.  However, the Court found that

the patent did not claim a combination of the lid, bottle and image forming apparatus.

1.    Katun Lids and Original GPI Lids

Ricoh argues that the original GPI and Katun lids embody every limitation described in

the '963 patent, as required by federal circuit case law.  See e.g., Southwall Techs., 54 F.3d at

1575.   Ricoh argues that the original GPI and Katun lids embody every limitation described in

the '963 patent.   Ricoh claims that the lids have a lug that protrudes from one side of the body of

the lid, allowing an imaging forming apparatus to plug and unplug the bottle.  Ricoh also alleges

-39-

FOR PUBLICATION

that the lids have a mushroom-shaped lug that protrudes substantially from the center of the body

of the lid.

Defendants argue that if the preamble of the '963 patent claim 1 is not limiting, the patent

is invalid, and if the preamble is limiting, it covers the combination of lid, bottle and image

forming apparatus.  In its claim construction analysis, the Court has found that the preamble to

claim 1 is limiting, but that it does not claim a combination of lid, bottle, and image forming

apparatus.  The Court also found that the '963 patent is valid.  Therefore, Defendants' argument

that the preamble to claim 1 precludes Ricoh from obtaining summary judgment on the issue of

infringement is unavailing.

Defendants also argue that the lid is an unpatented subpart of the combination of lid,

bottle, and image forming apparatus.  The sale of an unpatented subpart of a patented

combination does not constitute patent infringement.  See Aro Mfg. Co. v. Convertible Top

Replacement, 365 U.S. 336 (1961).  As discussed in the claim construction analysis, the '963

patent claims a lid alone, and not a combination of lid, container and image forming apparatus.

Therefore, Defendants' argument that the lid is an unpatented subpart is also unavailing.

With regard to the alleged infringement by the original GPI and Katun lids, Defendants

do not make any arguments that their product is structurally distinct from the structure disclosed

in the '963 patent.  Upon comparison of the original GPI and Katun lids to claim 1 of the '963

patent, the Court finds that the original lids sold by GPI, Katun and Nashua contain every

limitation contained in claim 1.  Claim 1 of the '963 patent reads:

**FOR PUBLICATION**

> A lid to selectively plug or unplug a discharge mouth of a developer container
> mounted to an image forming apparatus for replenishing a developer, said lid
> comprising:
>> a body, and
>> a lug protruding from one side of said body,
>>> said lug facing outward from said developer container when said lid
>>> plugs said discharge mouth.  ('963 Patent, Claim 1)

The Court finds that every limitation set forth in claim 1 of the '963 patent is found in the

original GPI and Katun lids.  The original GPI and Katun lids are lids "to selectively plug or

unplug a discharge mouth of a developer container mounted to an image forming apparatus for

replenishing a developer." Id.  The original GPI and Katun lids are replacement parts for Ricoh

copiers, and as such are designed so the copiers can selectively plug and unplug the container

once it is mounted to the copier.  As replacement parts, these lids are meant to function

identically to the original Ricoh copier toner container.  The original GPI and Katun lids mate

with the developer container, and the image forming apparatus, exactly as claimed in the

preamble of the '963 patent.  In addition, the original GPI and Katun lids are comprised of "a

body."  The body of the original Katun and GPI lids have a shape similar to the lids depicted in

the '963 patent.  They have a round "bottom portion," and sides that extend up from the bottom

portion.  The original GPI and Katun lids also have a lug that protrudes from one side of the body

of the lid.  The lug also faces outward from the developer container when the lid plugs the

discharge mouth of the container, as claimed in the '963 patent.  The Court finds that every

limitation set forth in claim 1 of the '963 patent is found in the original GPI lids and Katun lids.

Because literal infringement of the '963 patent has already been established, there is no need for

the Court to determine whether the original GPI and Katun lids infringe upon any of the '963

FOR PUBLICATION

patent's dependent claims 2-5.  Ricoh's motion for summary judgment is granted with respect to

the original GPI and Katun lids because a rational jury could only conclude that the original GPI

lids and Katun lids infringe the '963 patent.

> 2.   New GPI Lid

Ricoh also argues that the new GPI lid literally infringes independent claim 1, and

dependent claims 4 and 5 of the '963 patent.  The new GPI lid has a two piece construction,

composed of body and a lug attached thereto.  The body of the new GPI lid has a round bottom

portion and sides extending up from the round bottom portion.  The lug of the new GPI lid is

attached to the body of the lid at three points.  There is open space directly underneath the lug

between the body of the lid and the lug.

The Court finds that every limitation of claim 1 of the '963 patent is also present in the

new GPI lid.  The new GPI lid is a lid "to selectively plug or unplug a discharge mouth of a

developer container mounted to an image forming apparatus for replenishing a developer."  '963

Patent, Claim 1.  Defendants argue that the preamble to claim 1 requires the bottle to be mounted

to an image forming apparatus, and that because Defendants do not sell image forming

apparatuses, the have not infringed on the '963 patent.  To repeat, the Court finds that the

preamble of claim 1 does not require the combination of image forming apparatus, bottle and lid.

It is clear, and undisputed, that the new GPI lid also has a "body" and a "lug protruding from one

side of [the lid] body."  '963 Patent, Claim 1.  The Court also finds that the lug faces outward

from the developer container when the lid plugs the discharge mouth.  Defendants dispute this

fact and again argue that the preamble requires a combination of image forming apparatus,

**FOR PUBLICATION**

container and lid.  The Court has addressed this argument, which it determined unconvincing.

Defendants do not dispute that the lug of the new GPI lid "fac[es] outward from said developer

container when said lug plugs said discharge mouth."  '963 Patent, Claim 1.  Every limitation set

forth in claim 1 of the '963 patent exists in the new GPI lid.  The Court finds that no reasonable

jury would find that the new GPI lid does not contain every limitation in claim 1 of the '963

patent.  As literal infringement of the '963 patent has been established, there is no need for the

Court to determine whether the new GPI  lid literally infringes upon any of the '963 patent's

dependent claims. Ricoh's motion for partial summary judgment is granted.

**CONCLUSION**

It is on this 2nd day of August, 2005,

ORDERED that Ricoh's motion for partial summary judgment of "no invalidity" is

GRANTED; that Ricoh's motion for partial summary judgment of infringement is GRANTED;

and that Defendants' motion for partial summary judgment of invalidity is DENIED.

**s/ William H. Walls, U.S.D.J.**

**FOR PUBLICATION**

**Appearances:**

Lanny Steven Kurtzweil
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652

Brian M. English
William H. Trousdale
Tompkins, McGuire Wachenfeld & Barry, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4070

Kevin Harry Marino
Marino & Associates
One Newark Center
9th Floor
Newark, NJ 07102-5211

Mary Susan Henifin
Buchanan Ingersoll PC
700 Alexander Park
Suite 300
Princeton, NJ 08540