FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RICOH COMPANY, LTD., RICOH CORPORATION and RICOH ELECTRONICS, INC., | : : : : | **OPINION** |
|  | : |  |
| Plaintiffs, | : | Civ. No. 03-2612 (WHW) |
|  | : |  |
| v. | : |  |
|  | : |  |
| KATUN CORPORATION, PNA HOLDINGS LLC, GENERAL PLASTICS INDUSTRIAL CO., LTD., and NASHUA CORPORATION, | : : : : | |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

**Walls, Senior District Judge**

Defendants General Plastics Industrial Co., Ltd. ("GPI"), Katun Corporation ("Katun")

PNA Holdings, LLC, and Nashua Corporation ("Nashua") (together, "Defendants") move for

summary judgment on the invalidity of U.S. Patent No. 6,075,963 ("the '963 patent") based on

the definiteness requirement of 35 U.S.C. §112. In connection with that motion, plaintiffs Ricoh

Company, Ltd., Ricoh Corporation, and Ricoh Electronics, Inc. (together, "Ricoh") move for

leave to file a sur-reply. Defendants also move for partial summary judgment of anticipation of

the '963 patent and Ricoh cross-moves for partial summary judgment of no anticipation of the

'963 patent. Ricoh moves for a permanent injunction in connection with the '963 patent.

Pursuant to Fed. R. Civ. P. 78, the motions are decided without oral argument. All remaining

motions by the parties, including motions on enforceability and antitrust with respect to the '963

patent, will be addressed separately.

**FOR PUBLICATION**

**FACTS AND PROCEDURAL BACKGROUND**

Ricoh is a family of companies that manufactures photocopying machines and related replacement products, including photocopier toner. Defendants sell replacement parts for use in copy machines. Katun works with GPI and Nashua to develop and manufacture replacement toner bottles. GPI manufactures and sells to Nashua two of the toner bottles and lids at issue in this case. Nashua purchases toner bottles and lids from GPI and itself oversees the manufacture of certain other toner bottles and lids at issue. Nashua then labels and fills the bottles with toner, which it sells to Katun.

In its Amended Complaint, Ricoh alleges that Defendants are liable, among other things, for infringement of six Ricoh patents based upon their manufacture and sale of toner bottles for use in Ricoh photocopiers. The patents-in-suit are U.S. Patent Nos. 5,455,662 ("the '662 patent"), 5,627,631 ("the '631 patent"), 6,289,195 ("the '195 patent"), 6,418,293 ("the '293 patent"), 5,828,935 ("the '935 patent"), and the '963 patent (together, the "patents-in-suit" or the "Ricoh patents"). The patents-in-suit all relate to toner bottles but derive from two distinct specifications. The first five patents-in-suit, the '662, '631, '963, '195, and '293 patents derive from the same patent application filed on December 28, 1993, and are part of the same patent family ("the '662 patent family"). The sixth patent-in-suit, the '935 patent, derives from a different patent application filed on October 11, 1996 and is based on a different "priority document" from the documents used for the '662 patent family.

-2-

**FOR PUBLICATION**

This case involves copier parts that are used to dispense replacement toner into a copier. Before the generation of replacement toner bottles at issue here was invented, toner bottles were generally installed in a vertical position. After the bottle was installed, the copier would rotate the bottle to a horizontal position. These toner bottles were restricted in size due to the amount of space required to rotate the bottle. However, a horizontally mounted bottle presented toner delivery problems – the toner would spill out as the bottle was being mounted, and as the toner was used, gravity would not propel the toner towards the bottle's mouth.

The new generation toner bottles are inserted in a horizontal position. It is no longer necessary for these bottles to move from a vertical position to a horizontal position, so they are larger. Ricoh claims that it solved the delivery problems by inventing a new lid that is removed by the copier after the bottle is installed and a "scoop" system that delivers the toner to the mouth of the bottle as needed. In addition, the "screw" shape of the toner bottles allows the toner bottle to be rotated inside the machine without any additional space. In this litigation, defendants claim that Ricoh's bottle designs are not new and were anticipated by earlier patents. Defendants point to a number of patents obtained before the patents-in-suit and claim that Ricoh obtained its patents by modifying the language in these existing patents.

On August 2, 2005, this Court issued an opinion construing the disputed claims of the patents-in-suit. It also considered defendants' arguments that the '963 patent was anticipated by either of two references: the Matsushita Patent or the Ayotte Patent. This Court found that the '963 patent was not anticipated by these references and, accordingly, granted Ricoh's motion for partial summary judgment of no invalidity. Having found that the accused product literally

**FOR PUBLICATION**

infringed the '963 patent, this Court also granted Ricoh's motion for partial summary judgment

of infringement.

Defendants now challenge the '963 patent on two additional grounds.  First, they argue

that in light of this Court's claim construction and the Federal Circuit's recent holding in IPXL

Holdings, L.L.C. v. Amazon.com Inc., 430 F.3d 1377 (Fed. Cir. 2005), the '963 patent is invalid

as indefinite under 35 U.S.C. §112.  Second, they argue that the '963 patent, as construed by this

Court, is anticipated by different prior art – the "Pritchitt Patent."[1]

This opinion decides those motions as well as two related motions: Ricoh's cross-motion

for partial summary judgment of no anticipation of the '963 patent and Ricoh's motion to file a

sur-reply in connection with defendants' motion on indefiniteness.

## SUMMARY JUDGMENT

### I.      Legal Standard

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  Only the existence of a genuine and material factual dispute between the

parties will defeat a motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could find for the non-

movant on that issue; it is material if, under the substantive law, that issue would affect the

outcome of the suit.  See id. at 248.

---

[1] U.S. Patent No. 4,372,467.

FOR PUBLICATION

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]" that show that there is no genuine material issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

It is well-settled that the issues in a patent case are subject to summary judgment. See Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988).

II.     Discussion

    A.      Validity of the '963 Patent – Indefiniteness

FOR PUBLICATION

Under 35 U.S.C. § 282, a patent is presumed valid.  Ricoh does not bear the initial burden

to submit evidence supporting the validity of its patent.  Avia Group, 853 F.2d at 1562.  Rather,

defendants must "establish facts, by clear and convincing evidence, which persuasively lead to

the conclusion of invalidity."   Id.

### 1.    Law of Indefiniteness

The Patent Act requires that each claim in a patent "particularly point[] out and distinctly

claim[] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112 (2006).

A claim violates this definiteness requirement if it does not "reasonably apprise those skilled in

the art of its scope."  IPXL, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005).  Indefiniteness is a

question of law.  Id. at 1380.  In IPXL, the Federal Circuit was asked to decide whether a "single

claim covering both an apparatus and a method of use of that apparatus is invalid."  Id. at 1384.

While that court identified this issue as a matter of first impression for the Federal Circuit, it

pointed out that the "Board of Patent Appeals and Interferences [] has made it clear that reciting

both an apparatus and a method of using that apparatus renders a claim indefinite under section

112."  Id.  The Federal Circuit adopted the Board's reasoning: were a claim to include "two

separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would

not know from the claim whether it might also be liable for contributory infringement because a

buyer or user of the apparatus later performs the claimed method of using the apparatus."  Id.

The claim at issue in IPXL read:

> *The system* of claim 2 [including an input means] wherein the predicted transaction
> information comprises both a transaction type and transaction parameters associated with
> that transaction type and the *user uses the input means* to either change the predicted

-6-

**FOR PUBLICATION**

> transaction information or accept the displayed transaction type and transaction parameters.

Id. (emphasis added by Federal Circuit).  The Federal Circuit found that this claim covered both an apparatus – "the system" – and a method – when the "user uses the input means" – and accordingly was invalid.

Recently, parties in several cases have asked district courts to find claims invalid under IPXL.  In almost all cases, district courts have held that the suspect claims did not cover both an apparatus and a method, but rather were apparatus claims containing functional limitations.  See, e.g., Yodlee, Inc. v. CashEdge, Inc., No. 05-01550, 2006 WL 3456610, at *3-5 (N.D. Cal. Nov. 29, 2006);  Toshiba Corp. v. Juniper Networks, Inc., No. 03-1035, 2006 WL 1788479, at *2-5 (D.Del. June 28, 2006);  Collegenet, Inc. v. XAP Corp., 442 F.Supp.2d 1036, 1062-63 (D.Or. 2006);  Collaboration Props., Inc. v. Tandberg ASA, No. 05-01940, 2006 WL 1752140, at *6-7 (N.D. Cal. June 23, 2006);  Sienna, LLC v.CVS Corp., No. 06-3364, 2007 WL 13102, at *7-8 (S.D.N.Y. Jan. 3, 2007).  These courts found that claims containing both a physical description of an apparatus and a description of the apparatus' function, e.g., "communicates," "populates," "configured to," and "upon activation," were not impermissible apparatus-method claims.  Instead, these "claims simply use active language to describe the *capability* of the apparatuses; they do not claim the activity itself."  Yodlee, Inc., 2006 WL 3456610, at *4.  See also Collaboration Props., 2006 WL 1752140, at *6-7.

It is well-settled that a functional limitation – an attempt to define something by what it does rather than by what it is – is a permissible means of articulating a claim limitation.  See, e.g., In re Schreiber, 128 F.3d 1473, 1478 (Fed. Cir. 1997).  The district court in Yodlee

-7-

FOR PUBLICATION

provided the following example of a permissible functional limitation that could be safely

included in a claim alongside a description of the apparatus:

> A simple analogy would be a claim which physically describes a pair of scissors
> designed to cut paper, then states, "upon opening and closing the sharp edges of
> the scissors on a piece of paper, the paper is cut." The language describes the
> capability of scissors; it is function language. Infringement occurs upon the
> manufacturing and sale of scissors that are capable of cutting paper.

2006 WL 3456610, at *5.

### 2. Analysis

The claim language in IPXL clearly covered both the system and the user's active "use"of

the system. In the case at hand, this Court held that Ricoh's claim was limited by language in the

preamble that reads: "to selectively plug or unplug a discharge mouth of a developer container

mounted to an image forming apparatus." 380 F.Supp.2d at 435-36.[2] Unlike the claim in IPXL,

this language does not describe active use. Rather, like the district court cases above, it describes

the claimed apparatus in functional terms. As this Court held in its August 2 opinion:

> [W]hat is claimed is solely a lid, specifically designed to function with the
> developer containers to be used in the environment of the image forming
> apparatus. . . .The Court finds that the preamble of claim 1, "[a] lid to selectively
> plug or unplug a discharge mouth of a developer container mounted to an image

---

[2] For context, claim 1 of the '963 patent (the only independent claim) reads:

> 1. A lid to selectively plug or unplug a discharge mouth of a developer
> container mounted to an image forming apparatus for replenishing a
> developer, said lid comprising:
>> a body, and
>> a lug protruding from one side of said body,
>> said lug facing outward from said developer container when said
>> lid plugs said discharge mouth.

**FOR PUBLICATION**

>  forming apparatus for replenishing a developer" is a functional description of the
>  lid whose structure is further described in the body of the claim.

Id. at 435.

This Court's claim construction was clear: the preamble gives life and meaning to the lid

by describing the function of the lid and the environment in which it is designed to operate. The

claim does not recite a method of use. See Yodlee, 2006 WL 3456610, at *4 ("The claims

simply use active language to describe the *capability* of the apparatuses; they do not claim the

activity itself"). Accordingly, the Court finds that the '963 patent does not contain an

impermissible method-apparatus claim.[3]

---

[3] In making this argument on invalidity, defendants try to re-argue claim construction.
Their argument assumes that a preamble may do only one of three things: describe a method,
explicitly state a structural limitation, or state the purpose and intended use of the invention.
Defendants argue that the preamble here does not provide a structural limitation and assert that a
statement of purpose or intended use contained in a preamble cannot be limiting. Defendants
conclude that because the Court found this preamble limiting, the only remaining option is that
the preamble describes a method. Because this argument warrants some discussion and because
the bulk of the argument appears in defendants' reply brief, the Court grants Ricoh's request to
file their sur-reply. The Court has already had the opportunity to review the sur-reply, which was
attached as Ex. A to the Certification of Elizabeth R. Duckett, Esq.

The Court disagrees with the premise of defendants' argument. First, as this Court noted
in its August 2 opinion, the Federal Circuit has held that a statement of purpose appearing in a
preamble may be limiting. 380 F.Supp.2d at 434-35; In re Stencel, 828 F.2d 751, 755 (Fed. Cir.
1987). Second, to the extent defendants implicitly argue that a preamble may not contain a
functional limitation, the Court notes that the Federal Circuit has clearly held that limitations may
be functional and has never stated that a limitation articulated in functional terms may not appear
in a preamble. In an effort to distinguish preamble language that is limiting from non-limiting,
mere introductory language, the Federal Circuit has sometimes emphasized the structural
limitations imposed by functional language appearing in a preamble. See, e.g., Corning Glass
Works v. Sumitomo Electronic U.S.A., Inc., 868 F.2d 1251, 1256-57 (Fed. Cir. 1989) (preamble
limits claim to fibers that "work as" waveguides, and requires structural relationship that will
allow invention to "function as an optical waveguide."); see also In re Paulsen, 30 F.3d 1475,
1479-80 (Fed. Cir. 1994) (where use of term "computer" in preamble limited claim to device that

FOR PUBLICATION

The Court notes Ricoh's argument that defendants waived this defense by failing to raise

it in when they opposed Ricoh's earlier cross-motion for partial summary judgment of no

invalidity. (Defs.' Reply and Opp'n, filed February 23, 2004.)  The Court agrees with defendants

that they were not required to raise this indefiniteness defense at that time.  As discussed later,

the motion Ricoh references was a cross-motion for summary judgment on invalidity, limited to

the subject matter of the original summary judgment motion, that is whether the Matsushita or

Ayotte references anticipate the '963 patent.  Defendants could not be expected to raise an

entirely separate indefiniteness-invalidity argument in opposing Ricoh's cross-motion.  See Enzo

Life Sciences, Inc. v. Digene Corp., 305 F.Supp.2d 400, 405 (D.Del. 2004).[4]

### B.    Validity of the '963 Patent - Anticipation by Pritchitt

---

is "capable of carrying out calculations," preamble imposed "structural limitation" as opposed to
"mere introductory language").  Indeed, limitations couched in functional terms will often
impose structural requirements, as is the case here, where this Court held that the preamble
language limits the claim to a lid *specifically designed* to function with the developer containers
to be used in the environment of the image forming apparatus."  380 F.Supp.2d at 435 (emphasis
added).  This Court has already found that the preamble here is necessary to give life, meaning,
and vitality to the claim.  That remains true whether such language is labeled a statement of
purpose, a functional limitation, or a structural limitation.  Finally, the Court notes that
defendants' indefiniteness argument fails regardless of which of these characterizations best
describes the preamble because the preamble clearly does not describe a method.

[4] Ricoh also argues in a footnote that this defense should be stricken because defendants
failed to identify it in their responses to interrogatories and failed to provide plaintiffs with any
discovery on this defense.  In response, defendants point to general assertions in their answers
stating that the patent was invalid under 35 U.S.C. § 112.  The Court is wary of sanctioning
dilatory conduct.  However, Ricoh's footnote does not articulate how Ricoh was harmed by any
delay and the Court does not wish to wade into any quagmire concerning whether defendants'
statements with respect to 35 U.S.C. §112 were sufficient to disclose this defense or if IPXL
created any new law that would excuse defendants from disclosure of such a defense.

FOR PUBLICATION

### 1.    Waiver of Claims

Following this Court's claim construction opinion, defendants identified the Pritchitt patent as an allegedly anticipating reference and have now moved for summary judgment on anticipation based on Pritchitt.  Ricoh devotes a substantial portion of its opposition to defendants' motion charging that any argument with respect to this reference is waived because defendants produced it ten months after the close of fact discovery and because, according to Ricoh, this Court's finding of "no invalidity" is now the law of the case.  With regard to the first point, defendants counter that they produced Pritchitt in supplementing their discovery responses following this Court's 2005 opinion on claim construction and that such supplementation was reasonable in light of the Court's opinion.  They also argue that Ricoh was not prejudiced by any delay in identifying Pritchitt because defendants included the reference in their interrogatory responses before the due date for the invalidity experts' reports, enabling Ricoh's expert to incorporate and respond to Pritchitt.

The Court is aware of the possibility that by withholding potentially anticipatory references until after the Court has ruled on claim construction and summary judgment motions, a defendant may substantially prejudice a patent-holder.  Here, however, the Court finds that Ricoh has not been harmed by the timing of defendants' disclosure.  In determining whether a failure to disclose was harmless, this Court looks to: (1) whether the opposing party was prejudiced, (2) whether such prejudice may be cured, (3) the likelihood such failure will disrupt trial, (4) bad faith or willfulness, and (5) the importance of the evidence.  <u>See In re Mercedes-</u>

**FOR PUBLICATION**

Benz Anti-Trust Litig., 225 F.R.D. 498, 506 (D.N.J. 2005), citing Newman v. GHS Osteopathic

Inc. Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995).

Because Ricoh's expert was able to incorporate Pritchitt into his report and Ricoh had the

opportunity to depose defendants' expert on Pritchitt, the Court finds that Ricoh was not

prejudiced.  Given the stage in proceedings and that other motions remain outstanding, any delay

in producing such evidence will not disrupt preparation for trial.  As to bad faith or willfulness,

defendants explain, plausibly, that they located Pritchitt when searching for prior art in response

to the Court's claim construction.  Finally, prior art potentially invalidating a patent is potentially

critical to defendants' case.  On balance, the Court finds that to the extent any delay in disclosing

Pritchitt was improper, it was also harmless, and the Court will not deem such defense waived.

Nor is the Court persuaded that defendants' motion is somehow barred by the Court's

earlier "no invalidity" opinion.  As discussed in detail below, that opinion did not resolve all

potential challenges to the validity of the '963 patent; it was not a finding of global *validity*.  The

Court held only that the '963 patent was not anticipated by either the Ayotte or the Matsushita

references.  As discussed later, the Court's opinion did not address defendants' obviousness

argument.  The 2005 opinion did not establish any "law of the case" preventing this Court from

finding the '963 patent invalid based on a future motion.

### 2.     Law on Anticipation

Under 35 U.S.C. § 282, a patent is presumed valid.  Defendants bear the burden of

"establish[ing] facts, by clear and convincing evidence, which persuasively lead to the conclusion

of invalidity."  Avia Group, 853 F.2d at 1562.  A patent is invalid as anticipated if "the invention

-12-

**FOR PUBLICATION**

. . . was patented or described in a printed publication in this or a foreign country . . . more than

one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).

A patent issued by the PTO or a foreign patent authority is a printed publication under § 102(b) if

it was issued at least one year before the challenged patent was sought.  To anticipate an existing

patent, a single prior publication must contain all the essential limitations of each claim.

Defendants must show that "each element of the claim in issue is found in a prior patent or

publication, either expressly or under principles of inherency." Tyler Refrigeration v. Kysor

Indus. Corp., 777 F.2d 687, 689 (Fed. Cir. 1985).  "Under the principles of inherency, if the prior

art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates."

Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1347 (Fed. Cir. 1999).  The prior art,"must

disclose every element of the challenged claim and enable one skilled in the art to make the

anticipating subject matter." PPG Indus. Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1566 (Fed.

Cir. 1996).  However, it need not present the invention in a positive light, so long as all claims

are explicitly or inherently contained in the publication.  See Celeritas Tech Ltd. v. Rockwell

Int'l Corp., 150 F.3d 1354, 1361 (Fed. Cir. 1998).

        An anticipation analysis requires a two-step process.  The first step is claim construction.

The second step requires the Court to compare the properly construed claims with the subject

matter described in the prior art references and identify the elements disclosed in the allegedly

anticipating reference.  See e.g., Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1346 (Fed. Cir.

2000).  Claim anticipation in prior art is a finding of fact.  See Titanium Metals Corp. of America

v. Banner, 778 F.2d 775, 780 (Fed. Cir. 1985).  Defendants' motion, then, can only be granted if

**FOR PUBLICATION**

there are no genuine disputes of material fact as to whether the processes described in any one of the articles submitted anticipate the patents' claims.

### 2. Law on Claim Construction

This Court has already ruled on claim construction. Nonetheless, the parties point to two terms they view as relevant to the question of whether Pritchitt is anticipatory and that were not previously construed by this court: "lid" and "lug."[5] As to "lid," defendants propose "something that covers the opening of a hollow container (as a vessel or box): a movable cover." Ricoh adopts this definition, but places a qualification on its meaning, arguing that this dictionary definition is acceptable only if "the dictionary definition itself is understood to be consistent with the teachings of the '963 patent." (Pls.' Opp'n at 7.) The parties argue for different definitions of "lug," with defendants proposing "a projection with which the copier interacts," and Ricoh proposing "a projection or a handle by which something may be grasped."

In order to resolve the question of anticipation, the Court must first construe the terms "lid" and "lug." Claim construction is a matter of law reserved exclusively for the courts. Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). The claims of the patent-in-suit must be construed before an infringement or invalidity analysis can be performed. Ethicon Endo-

---

[5] For context once again, claim 1 of the '963 patent (the only independent claim) reads:

1. A lid to selectively plug or unplug a discharge mouth of a developer container mounted to an image forming apparatus for replenishing a developer, said lid comprising:
    a body, and
    a lug protruding from one side of said body,
    said lug facing outward from said developer container when said lid plugs said discharge mouth.

**FOR PUBLICATION**

Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998);  Helifix,

Ltd., 208 F.3d at 1346.  Only those claims at issue and in dispute need to be construed.  See

United States Surgical Corp. v. Ethicon, Inc. 103 F.3d 1554, 1568 (Fed. Cir. 1997).

When interpreting an asserted patent claim, courts should look first to the intrinsic

evidence of record, which includes the patent's claims, the patent's specification, and the

complete prosecution history.  Markman, 52 F.3d at 979.  Intrinsic evidence is the most

significant source of the legally operative meaning of disputed claim language.  Vitronics Corp.

v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996).

The first principle of claim construction is that "the language of the claim defines the

scope of the protected invention."  Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.,

55 F.3d 615, 619 (Fed. Cir. 1995).  Accordingly, "resort must be had in the first instance to the

words of the claim," words to which courts generally ascribe their ordinary meaning.  Envirotech

Corp. v. Al George, Inc., 730 F.2d 753, 759 (Fed. Cir. 1984).  A term's ordinary meaning is the

"meaning that the term would have to a person of ordinary skill in the art in question at the time

of the invention."  See Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).  Claim

terms are assigned their ordinary meaning unless it appears from the patent specification or file

history that the words were used differently by the inventor.  See id. at 1313, 1316-17.

In Phillips, the Federal Circuit observed that often "the claims themselves provide

substantial guidance as to the meaning of particular claim terms."  Id. at 1314.  Both "the context

in which a term is used in the asserted claim" and the "[o]ther claims of the patent in question"

are useful for understanding the meaning of claim terms.  Id.  Similarities and differences among

-15-

FOR PUBLICATION

various claims are useful for understanding the meaning of particular claim terms.  Id.  As

example, the "the presence of a dependent claim that adds a particular limitation gives rise to a

presumption that the limitation is not present in the independent claim."  Id. at 1314-15.

However, patent claims "must be read in view of the specification, of which they are a

part."  Markman, 52 F.3d at 979-80.  "[T]he specification 'is always highly relevant to the claim

construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a

disputed term.'"  Phillips, 415 F.3d at 1315 (quoting Vitronics, 90 F.3d at 1582).  Thus, "[t]he

construction that stays true to the claim language and most naturally aligns with the patent's

description of the invention will be, in the end, the correct construction."  Renishaw PLC v.

Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998).  It is "entirely appropriate for

a court, when conducting claim construction, to rely heavily on the written description for

guidance as to the meaning of the claims."  Phillips, 415 F.3d at 1317.

However, in Comark Commc'ns Inc. v. Harris Corp., the Federal Circuit observed that

"there is sometimes a fine line between reading a claim in light of the specification, and reading a

limitation into the claim from the specification."  156 F.3d 1182, 1186-87 (Fed. Cir. 1998).  If

the specification expressly or implicitly defines terms used in the claims differently than their

ordinary meaning, then the definition derived from the specification will govern how the claim

terms are to be interpreted.  Markman, 52 F.3d at 979-80;  SciMed Life Sys. Inc. v. Advanced

Cardiovascular Sys., Inc. 242 F.3d 1337, 1344 (Fed. Cir. 2001).  If the embodiments in the

specifications are intended to be exemplary, and not "strictly coextensive" with the claims, then

they should not be read to limit the claims.  Phillips, 415 F.3d at 1323 (Fed. Cir. 2005).  See

-16-

FOR PUBLICATION

Rhine v. Casio, Inc., 183 F.3d 1342, 1346 (Fed. Cir. 1999); Electro Med. Sys. S.A. v. Cooper

Life Sciences, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

Courts may also rely on extrinsic evidence: "all evidence external to the patent and

prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."

Markman, 52 F.3d at 980.  However, extrinsic evidence is "less significant than the intrinsic

record in determining the legally operative meaning of claim language." C.R. Bard, Inc. v. U.S.

Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004) (quotation omitted).

As to dictionaries in particular, the Federal Circuit observed that "[d]ictionaries or

comparable sources are often useful to assist in understanding the commonly understood

meaning of words and have been used by both our court and the Supreme Court in claim

interpretation." Phillips, 415 F.3d at 1322.  Courts should not, however, rely on dictionary

definitions where such definitions conflict with meanings ascertained from the intrinsic evidence.

See id. at 1322.  The Federal Circuit has warned that "a general-usage dictionary cannot

overcome credible art-specific evidence of the meaning . . . of a claim term." Id.  (quoting

Vanderlande Indus. Nederland B.V. v. I.T.C., 366 F.3d 1311, 1321 (Fed. Cir. 2004).

3.    **Analysis**

a.    **Claim Construction**

"**Lid**"

As to the term "lid," the Court adopts the definition purportedly agreed upon by the

parties, with some clarification.  To a degree, the parties agree that the definition of a "lid" is

-17-

**FOR PUBLICATION**

"something that covers the opening of a hollow container (as a vessel or box); a movable cover."
(Defs.' Br. at 14;  Pls.' Opp'n at 7.)  However, while defendants assert that this definition is self-explanatory, Ricoh argues that the definition is only correct "so long as [it] is understood to be consistent with the teachings of the '963 patent." (Pls.' Opp'n at 7.)   Lurking behind this apparent consensus are two very different views of what it means for the lid to be a "movable cover."

Claim construction is distinct from, and a prerequisite to, an anticipation analysis. Nonetheless, the parties' arguments with respect to the Pritchitt patent reveal fundamental differences in their interpretations of "movable cover."  Defendants believe that something is a "movable cover" so long as it is capable of being moved at some point, possibly in relation to a toner cartridge bottle.  As example, the valve disclosed in Pritchitt is movable because it is screwed onto the toner bottle before the bottle is mounted into a photocopier.  (Defs.' Reply at 13.)  Defendants do not believe that the lid as a whole needs to be "movable" while mounted to the copying apparatus. See id.

In contrast, plaintiff interprets "movable cover" to mean that the lid as a whole is movable when mounted to the image-forming apparatus. (Pls.' Opp'n at  9.)  More specifically, plaintiff appears to require that the "movable cover" move, while mounted, so as to selectively open and close a toner bottle. See id. at 9-10.

In light of this disagreement, the Court finds that the definition provided by defendant must be amended to further define "movable cover."  Both the intrinsic evidence and common

-18-

**FOR PUBLICATION**

sense support a definition of "lid" requiring that the lid, as a whole, be movable when the lid is

mounted onto the image-forming apparatus, in a position to selectively plug and unplug the

discharge mouth of a developer container.

The Court finds that one of ordinary skill in the art would understand "lid" to have this

meaning for two reasons.  First, the intrinsic evidence repeatedly and invariably describes the

invention as a lid capable of being removed and replaced after it is placed within a photocopier.

See Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("[t]he

construction that stays true to the claim language and most naturally aligns with the patent's

description of the invention will be, in the end, the correct construction.").  Second, if the term

"lid," were given the broad definition suggested by defendants, any object that is at some time

placed over an opening in a hollow container would constitute a "lid."  This definition would

include objects that are attached so as to permanently close an opening.  That meaning is both

inconsistent with ordinary usage of the term "lid" and is also illogical in the context of a patent

that concerns the flow of toner out of a toner bottle.

The patent consistently describes a lid that may be removed from and replaced onto the

mouth of the toner bottle once the bottle is mounted in the image-forming apparatus.  (See e.g.,

'963 Patent, figs. 4A, 4B, 4C, 6, 9A, 9B, 10B, 11B, 13A, 17B, 18B, 27, 28, 30; '963 Patent, col.

7, ll. 12-47; col. 8, ll. 31-33; col. 11, ll. 56 to col. 12, ll. 17; col. 12, ll. 39-52; col. 24, ll. 28-42.)

In the "summary" section of the written description, the patent outlines the "present invention['s]

. . . . unprecedented advantages," which include:

-19-

**FOR PUBLICATION**

> (1) Holding means for holding a developer container is rotatable in a substantially horizontal plane for the replacement of a developer container [sic]. . . .

> (2) A lid is automatically attached to and detached from a mouth portion included in the developer container.  Therefore, only if a person mounts the developer container to the holding means, a developer can be replenished. [sic]  This not only facilitates the replacement of the developer container, but also prevents the developer from falling from the mouth portion of the developer container.  In addition, the developer deposited on, for example, the inner surface of the mouth portion is prevented from falling to the outside.

> (3) While the holding means is held in a position for mounting the developer container, the container can be removed from the mouth portion thereof sealed by a lid.  This also prevents the developer deposited on the inner surface of the mouth portion from falling to the outside.

(col. 24, ll. 17-42.)

Every written and visual depiction of the invention describes a lid that is constructed to be moved once it has been placed inside the copier.  Moreover, as the "summary" reflects, this invention improves on the existing art by providing for a lid that can be removed and replaced after the toner bottle is placed horizontally in the copier.  This improvement avoids toner leakage when the developer container is mounted horizontally.  This evidence describes more than a preferred embodiment of the invention.  See Toro Co. v. White Consol. Indus., Inc., 199 F.3d 1295, 1301-02 (Fed. Cir. 1999); SciMed, 242 F.3d at 1343.  Rather, the ability of the lid to be removed and replaced once mounted is essential to the invention described by the patent.

Moreover, even in the absence of evidence from the specification, this definition is dictated by common sense, particularly given the general subject matter of the patent.  If by "movable cover" all that is conveyed is a cover that is movable at some point in space and time, the definition would apply to objects that do not satisfy any basic notion of a lid.  As example, a

-20-

**FOR PUBLICATION**

solid metal top that is soldered onto an open metal box during assembly of the box may be movable when first placed on the box, but it is no longer movable once soldered. It would be misleading, if not downright inaccurate, to call the thing that is now soldered to the box a "lid" because it was, at some point moved onto the top of the box. Otherwise, at some point during assembly or installation, any cover would be "movable."

In other words, to say that the cover need be "movable" without any further clarification is to render meaningless the adjective "movable," because virtually any cover is moved at some point. The resulting definition is too broad to be meaningful. See Nikken USA v. Robinsons-May, Inc., 51 Fed. Appx. 874, 883-84 (Fed. Cir. 2002) (rejecting construction that merely required that an object be "attachable," because anything could be "attachable"). It follows that to be a "lid," a cover must be movable during a specific period of time or when performing a certain activity. Upon reading the '963 patent, one of ordinary skill in the art would understand that the context of the invention described by the patent is the selective delivery of photocopier toner from a toner bottle. He or she would, against this background, understand that a "lid" is an object which is movable so as to selectively open and close the toner cartridge. As clearly set forth in the patent, that activity is only performed once the lid (along with the bottle) is mounted into the copier.

### "Lug"

**FOR PUBLICATION**

For similar reasons, the Court accepts Ricoh's definition of the term lug as "a projection or handle by which something may be grasped."[6]  As discussed above, the patent repeatedly and invariably describes a lid that is removed and replaced so as to plug and unplug the discharge mouth of a developer container.  It also repeatedly and invariably describes a lid containing a lug that is grasped so as to remove and replace the lid.  (See, e.g., figs. 4a, 4b, 4c, 9a, 9b, 13a; col. 7, ll. 12 - 47; col. 11, ll. 12-16, 60-63; col. 12, ll. 2-10; col. 12, ll. 2-10; col. 13, ll. 13-45; col. 19, ll. 23-42.)  Defendants' proposed construction – "a projection with which the copier interacts" – adds ambiguity to the term "lug" that does not exist in the patent.  The patent not only conveys that the copier "interacts with the projection on the lid," but consistently specifies *how* the copier interacts with the lug of the lid: the copier grasps the lug.

The Court is not persuaded by defendants' argument that the term "lug" must have a broader meaning because it is used elsewhere in the specifications to describe a projection on the bottle that is never grasped.  (Defs.' Br. at 25.)  The claims cover only a "lid."  As used in those claims, the term "lug" refers only to the projection on the lid.  The specifications uniformly describe that projection as being grasped.  The other use of the term "lug" – to describe a projection on the toner bottle – appears only in the specifications, with reference to a structure that is not part of the claimed subject matter and is never discussed in the claims.  Even where the same term appears more than once in the *claims*, the written description may support

----

[6] The Court's August 2, 2005 opinion construed "phrases related to a 'lug' protrusion of a developer container." 380 F.Supp.2d at 430.  Those phrases and the Court's analysis of them concerned the location on the lid from which the lug must protrude. Id. at 430-31.  The Court did not directly address the definition of the term "lug," which the parties now dispute.

-22-

FOR PUBLICATION

different definitions for the term. See, e.g., Pitney Bowes, Inc. v. Hewlett-Packard, Co., 182 F.3d

1298, 1310 (Fed. Cir. 1999).  Here, the use of the term "lug" is entirely consistent within the

claims; the other use of "lug" appears in the specification with reference to a portion of the toner

bottle not claimed by the '963 patent.  The Court finds that the proper construction of the claim

term "lug" is "a projection or handle by which something may be grasped."

### b.    Anticipation

The question on anticipation is whether the valve disclosed by Pritchitt discloses all of the

elements of the lid described in the '963 patent.  The "bird-feeder" valve disclosed in Pritchitt

(right, below) operates to allow the flow of  developer when the spindle (88) is pressed upwards

to lift the valve plug (84) off the seat (70).  When the spindle is released, the plug returns to the

seat, plugging the valve.  The Pritchitt patent also discloses a "flipper" mechanism which acts to

raise and lower the spindle (88), opening and closing the valve.

One embodiment of the '963 patent is displayed below (left, below).[7]  In this

embodiment, the lid (25) selectively plugs and unplugs a discharge mouth when the lid is

separated by the cap (29), by means of a mechanism that grasps the lug (26).

---

[7] The Court notes that this particular embodiment is not necessarily co-extensive with the
scope of the '963 patent, but for purposes of understanding the differences between the claims of
the '963 patent and the Pritchitt patent, this diagram is illustrative.

FOR PUBLICATION



'963 Patent, fig. 5A
(Shading added by Ricoh)

Pritchitt, fig. 2
(Shading added by Ricoh)

Pritchitt anticipates the '963 patent only if it discloses each of these elements. Tyler
Refrigeration v. Kysor Indus. Corp., 777 F.2d 687, 689 (Fed. Cir. 1985). Ricoh points out that
the only parts of the valve that are movable once the valve is mounted into the machine are the
valve plug (84), the spindle (88), and the spring (100). As construed above, a lid is a cover
designed to be movable – as a whole – once installed into the photocopier. At best, then, these
three parts (and only these three parts) could potentially constitute a "lid."

As construed by this Court on August 2, 2005, the patent also requires that the lid be able
to selectively plug or unplug a discharge mouth of a developer container mounted to an image
forming apparatus. 380 F.Supp.2d at 435-36. Pritchitt does not disclose a lid capable of
satisfying this limitation because the movable parts of the valve – the valve plug (84), spindle
(88), and spring (100) – cannot, by themselves, selectively plug or unplug a discharge mouth of a
developer container. Alone, they merely open and close an opening in the valve (the valve seat

**FOR PUBLICATION**

(70)).  Put differently, Pritchitt discloses an apparatus that must be secured onto the opening of a

toner bottle and which itself contains an opening that may be plugged and unplugged by movable

parts.  Those movable parts cannot plug or unplug the discharge mouth of the developer without

interacting with the fixed, non-movable parts of the valve.  Whereas the lid of the '963 patent is

designed to be moved on and off the discharge mouth of a developer container so as to open and

close it, the Pritchitt valve is attached to the developer container and allows the passage of toner

by means of certain internal moving parts.

The Court holds that no fact-finder could reasonably find that the Pritchitt patent

discloses a lid.  Having determined that Pritchitt is missing at least one element of the '963

patent, the Court need not consider whether Pritchitt discloses a "lug."  See Tyler Refrigeration v.

Kysor Indus. Corp., 777 F.2d 687, 689 (Fed. Cir. 1985).  Defendants' motion for summary

judgment on anticipation is denied and Ricoh's cross-motion for summary judgment of no

invalidity (no anticipation) is granted.

## PERMANENT INJUNCTION

Ricoh also requests that defendants be permanently enjoined from further infringement of

the '963 patent.  Both parties agree that "the general rule is that a permanent injunction will issue

once infringement and invalidity have been adjudged."  (Pls.' Reply at 5.)  They disagree on

whether the Court has considered defendants' argument that the '963 patent is invalid as obvious.

Ricoh argues that its cross-motion to defendants' motion for summary judgment on the

**FOR PUBLICATION**

Matsushita and Ayotte patents also raised the issue of obviousness and that this Court's August 2, 2005 opinion implicitly found that the '963 patent was not obvious.

Defendants' motion for summary judgment on the Matsushita and Ayotte Patent was limited to the issue of anticipation. Defendants did not move for summary judgment on obviousness. Ricoh, in its thirty-page opposition and cross-motion, devoted one and a half pages to arguing that defendants have provided no evidence suggesting that the patent is obvious in light of the Matsushita and Ayotte Patents. (Pls.' Opp'n at 28-29.)

Under local rule 7.1(h), a cross-motion must relate to the subject matter of the original motion. Anticipation and obviousness, while related, are "legally distinct and separate challenges to a patent's validity" requiring different elements of proof. Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1107-08 (Fed. Cir. 2003). Obviousness is not an appropriate subject for a cross-motion on anticipation.

This Court's August 2, 2005 opinion held that the '963 patent was not anticipated by either the Matsushita or Ayotte Patents. The opinion did not address the issue of whether the '963 patent was invalid as obvious. In granting Ricoh's motion for partial summary judgment of "no invalidity" this Court did not make a global finding that the '963 patent was valid as against all defendants' arguments for invalidity. Plaintiffs' motion for a permanent injunction is premature in light of the outstanding question of obviousness. The motion is denied.

### CONCLUSION

It is on this 3rd day of May, 2007,

**FOR PUBLICATION**

ORDERED that defendants' motion for summary judgment on invalidity under 35 U.S.C.
§ 112 is Denied.  Ricoh's request for leave to file a sur-reply in connection with that motion is
Granted.  Defendants' motion for summary judgment on anticipation is Denied and Ricoh's
cross-motion for judgment of no anticipation is Granted.  Finally, Ricoh's motion for a
permanent injunction is Denied.

<u>s/ William H. Walls, U.S.S.D.J.</u>

**FOR PUBLICATION**

**<u>Appearances:</u>**

**<u>For Plaintiffs:</u>**

Lanny S. Kurzweil
Irene M. Hurtado
**McCarter & English, LLP**

Richard D. Kelly
Jordan S. Weinstein
William T. Enos
James J. Kulbaski
Michael E. McCabe, Jr.
Robert C. Mattson
Kenneth D. Wilcox
Elizabeth R. Duckett
**Oblon, Spivak, McClelland,**
**Maier & Neustadt, PC**

**<u>For Defendants Katun Corporation and PNA Holdings:</u>**

William H. Trousdale
Brian M. English
**Tompkins, McGuire, Wachenfeld & Barry, LLP**

David K. Callahan
Bryce C. Pilz
Thomas G. Pasternak
Christopher W. Keegan
Erick S. Ottoson
**Kirkland & Ellis, LLP**

**<u>For Defendant Nashua Corporation:</u>**

Mary S. Henifin
**Buchanan Ingersoll, PC**

James Quarles
Lisa J. Pirozzolo
Christopher R. Noyes

**FOR PUBLICATION**

**Wilmer, Cutler, Pickering, Hale & Dorr, LLP**

<u>**For Defendant General Plastics Industrial Corporation:**</u>

Kevin H. Marino
John D. Tortorella
**Marino & Associates, PC**

Joseph R. Manning
Bryan G. Harrison
John P. Fry
**Morris, Manning & Martin, LLP**