**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| RICOH COMPANY, LTD., RICOH CORPORATION, and RICOH ELECTRONICS, INC., | : : : : : | Civ. No. 03-2612 (GEB) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : : | |
| KATUN CORPORATION, PNA HOLDINGS LLC, GENERAL PLASTICS INDUSTRIAL CO., LTD., and NASHUA CORPORATION, | : : : : : | |
| Defendants. | : : | |

**BROWN, Chief Judge**

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

        A.    The Court's Prior Opinions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

        B.    The Present Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

III.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

        A.    Standard of Review for Motions for Summary Judgment . . . . . . . . . . . . . . . . .   5

        B.    Defendants' Motion for Summary Judgment of Non-Infringement of the
              '662 Patent and the '195 Patent and Plaintiff's Cross-Motion for Summary
              Judgment of Infringement of the '195 Patent . . . . . . . . . . . . . . . . . . . . . . . . . .   6

              1.    Patent Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

                    a.    Claims 37 to 40 of the '662 Patent . . . . . . . . . . . . . . . . . . . . . . . .   8

                    b.    Claims 9 to 11 of the '195 Patent . . . . . . . . . . . . . . . . . . . . . . . .   10

              2.    Plaintiff's Claims Against PNA Holdings . . . . . . . . . . . . . . . . . . . . . . .   12

        C.    Defendants' Motion for Summary Judgment of Invalidity of the '662 Patent

  and Plaintiff's Cross-Motion for Summary Judgment of No Invalidity of
  the '662 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

  1.  The "Written Description" Requirement of 35 U.S.C. § 112 . . . . . . . . . 13

    a.  Claim 37 of the '662 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

  2.  Anticipation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    a.  The Kitajima Reference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    b.  The Knechtel Reference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D. Plaintiff's Motion for Summary Judgment of Enforceability and Other
  Defenses for the '963 Patent, or for a Bifurcated Trial on Enforceability
  and Other Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

  1.  Inequitable Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    a.  The Ayotte Reference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    b.  The Kitajima Reference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

  2.  Laches and Equitable Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

  3.  Waiver and Permissible Repair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

  4.  Unclean Hands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

  5.  Defendants' Other Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

E. Plaintiff's Motion for Summary Judgment of Defendants' Antitrust
  Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

  1.  *Walker Process* Antitrust Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

  2.  Defendants' Antitrust Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

F. Plaintiff's Motion to Strike Portions of Defendants' Reply Briefs . . . . . . . . . . 32

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## I.   INTRODUCTION

This matter comes before the Court upon:  (1) plaintiffs Ricoh Company, Ltd., Ricoh Corporation, and Ricoh Electronics, Inc.'s (collectively "Ricoh" or "Plaintiff") motion for summary judgment of the enforceability of U.S. Patent No. 6,075,963 ("the '963 patent"); (2) Plaintiff's motion for summary judgment of defendants General Plastics Industrial Co., Ltd. ("GPI"), Katun Corporation ("Katun"), PNA Holdings, LLC ("PNA"), and Nashua Corporation's ("Nashua") (collectively "Defendants") antitrust counterclaims; (3) Defendants' motion for summary judgment of invalidity of U.S. Patent No. 5,455,662 ("the '662 patent"); (4) Plaintiff's cross-motion for summary judgment of no invalidity of the '662 patent; (5) Defendants' motion for summary judgment of noninfringement of the '662 and '195 patents, and for no liability of PNA Holdings; (6) Plaintiff's cross-motion for summary judgment of infringement of the '195 patent; and (7) Plaintiff's motion to strike certain portions of Defendants' reply briefs.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  This case was reassigned to the undersigned on July 3, 2007.  The parties have completed briefing the present motions, and the Court has read and fully considered the parties' submissions.  The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will:  (1) grant Plaintiff's motion for summary judgment of the enforceability of the '963 patent; (2) deny Plaintiff's motion for summary judgment of Defendants' antitrust counterclaims; (3) deny Defendants' motion for summary judgment of invalidity of the '662 patent; (4) grant in part and deny in part Plaintiff's cross-motion for summary judgment of validity of the '662 patent; (5) grant in part and deny in part Defendants' motion for summary judgment of noninfringement of the '662 and '195 patents, and for no liability of PNA Holdings; (6) deny Plaintiff's cross-motion for summary judgment of infringement of the '195 Patent; and (7) deny Plaintiff's motion to strike certain portions of Defendants' reply briefs.

3

## II.    BACKGROUND

A detailed explanation of the background in this case is set forth in the prior opinion dated May 3, 2007.  Rather than repeat that description here, the Court will provide a brief summary of the relevant facts of this case and the developments following that decision.

This case concerns Defendants' alleged infringement of certain patents for designing replacement toner bottles for copier machines.  Ricoh is a family of companies that manufactures photocopying machines and products for those machines, including replacement toner bottles. (May 3, 2007 Op. at 2.)  Defendants also develop, manufacture, and sell replacement toner bottles.  (*Id.*)  GPI manufactures and sells to Nashua two of the toner bottles and lids at issue in this case, while Nashua oversees the manufacture of certain other toner bottles at issue.  (*Id.*) Nashua labels and fills the bottles with toner, and sells those bottles to Katun.  (*Id.*)

On May 30, 2003, Plaintiff filed the present action against Defendants.  In the Amended Complaint, Plaintiff alleges that Defendants are liable, among other things, for infringement of several of its patents based on Defendants' manufacture and sale of toner bottles for use in Ricoh photocopiers.  Defendants have asserted counterclaims against Plaintiff, including claims that Plaintiff violated the antitrust laws by procuring its patents through willful and intentional fraud upon the United States Patent and Trademark Office ("PTO").

### A.    The Court's Prior Opinions

On August 2, 2005, Judge Walls of this Court issued an opinion construing the disputed claims of the patents-in-suit.  In that opinion, the Court denied Defendants' motion for summary judgment of invalidity of the '963 patent based on anticipation by Japanese Kokai Patent Application No. SHO 60(1985)-243681 issued to Matsushita ("Matsushita") and U.S. Patent No. 3,318,496 issued to Ayotte ("Ayotte"), and granted Plaintiff's cross-motion for summary judgment that the '963 patent was not anticipated by either Matsushita or Ayotte.  The Court also granted Plaintiff's motion for summary judgment that the accused products infringed the '963

4

patent.

On May 3, 2007, Judge Walls denied Defendants' motion for summary judgment that the '963 patent is invalid as a result of indefiniteness. In that opinion, the Court also denied Defendants' motion for summary judgment that the '963 patent was anticipated by U.S Patent No. 4,372,467 ("Pritchett"), and granted Plaintiff's cross-motion for summary judgment that the '963 patent was not anticipated by Pritchett.

### B.       The Present Motions

The parties have filed seven additional motions that will be addressed in this opinion. On September 2, 2005, Plaintiff filed a motion for summary judgment that the '963 patent is enforceable or, in the alternative, for a bifurcated trial on enforceability and other equitable defenses. On October 21, 2005, Plaintiff filed a separate motion for summary judgment of Defendants' antitrust counterclaims. On May 19, 2006, Defendants filed their motion for summary judgment that the '662 patent is invalid, as well as their motion for summary judgment of noninfringement of the '662 and '195 patents, and of no liability for PNA Holdings. In response, Plaintiff filed a cross-motion for summary judgment that '662 patent is not invalid, and a cross-motion for summary judgment of infringement of the '195 patent. On August 14, 2006, Plaintiff filed a motion to strike portions of Defendants' reply briefs with respect to certain of their motions for summary judgment.

### III.    DISCUSSION

### A.       Standard of Review for Motions for Summary Judgment

In deciding a motion for summary judgment, a court should grant the motion if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The threshold

inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R. Civ. P. 56(f).

### B.    Defendants' Motion for Summary Judgment of Non-Infringement of the '662 Patent and the '195 Patent and Plaintiff's Cross-Motion for Summary Judgment of Infringement of the '195 Patent

Defendants seek summary judgment that the accused products do not infringe the '662 and '195 patents, and that PNA Holdings is not liable for any of Plaintiff's claims. Plaintiff seeks summary judgment that the accused products infringe the '195 patent.

Defendants make their arguments concerning non-infringement with respect to each of the accused products. (Defs.' Br. at 4 n.5, May 19, 2006 (stating that "[a]lthough the accused bottles are not all identical, Ricoh's errors in misapplying this Court's claim interpretation apply to all of the bottles at issue in this Motion in a similar fashion").) According to Defendants, "[e]ach of the bottles at issue in this Motion employs a spiral projection on the interior of the bottle, and conical sloped shoulders that exist between the mouth portion and the main body portion of the bottle." (*Id.* at 4.) Plaintiff similarly makes its arguments without referring to

6

specific products.  (Pl.'s Opp'n Br. at 2 n.1, June 26, 2006 (stating that "[b]ecause Defendants' brief does not raise separate non-infringement issues for the various bottles, they are addressed together in this opposition and cross-motion, using representative bottles, unless otherwise noted".)  This Court will therefore address the parties' arguments with respect to the accused products generally.

### 1.      Patent Infringement

Patent infringement analysis is a two-step process.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*,  517 U.S. 370 (1996).  The first step is determining the meaning and scope of the patent claims that are alleged to have been infringed. *Id.*  Claim construction is a matter of law.  *Id.* at 970-71.  The second step is comparing the properly construed claims to the accused product.  *Id.* at 976.  To succeed on a claim of literal infringement, the patentee must prove by a preponderance of evidence that an accused device contains "each and every limitation set forth in a claim . . . ."  *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004).  This step requires a factual determination.  *Id.*

Even if there is no literal infringement, an accused product "may infringe under the doctrine of equivalents if there is equivalence between those elements of the accused product and the claimed limitations of the patented invention that are not literally infringed."  *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999).  The doctrine of equivalents "does not require complete identity for every purpose and in every respect, . . . but does require substantial identity of function, means, and result."  *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) (internal quotations omitted).

Although the question of infringement is usually one for a jury, summary judgment may be granted "if no reasonable jury could determine that every limitation recited in the properly construed claim either is not, or is, found in the accused device . . . ."  *See Karlin Tech., Inc. v.*

*Surgical Dynamics, Inc.*, 177 F.3d 968, 974-75 (Fed. Cir. 1999).

### a.      Claims 37 to 40 of the '662 Patent

Claim 37 of the '662 patent states:

> 37.      A toner bottle for use with a toner replenishing device having a bottle holder into which a mouth portion of said toner bottle may fit for discharge of a toner in said toner bottle into said toner replenishing device, and a drive unit which rotatably drives said toner bottle when said toner bottle is mounted to said toner replenishing device, said toner bottle comprising:
>
> a main body comprising a substantially hollow container having, adjacent one end of said toner bottle, a first diameter portion having a first diameter;
>
> a discharge mouth at said one end, said discharge mouth comprising said mouth portion and having a second diameter substantially smaller than said first diameter; and
>
> a circumferential and radially extending ramp surface configuration of the peripheral surface of said main body at said one end and connecting radially between said first diameter portion and a radial position no greater than said second diameter portion.

('662 Patent, col. 28, ll. 5-25.)  Claims 38 to 40 are dependent on Claim 37 and therefore contain each of these limitations.  (*Id.* at col. 28, ll. 26-35.)

In its August 2, 2005 Opinion, the Court construed the term "ramp surface" as it is used in the '662 and '195 patents.  (Aug. 2, 2005 Op. at 14.)  In that opinion, the Court addressed Plaintiff's argument that the term should be construed to include "spiral projections."  (*Id.* at 15.)  The Court rejected that argument, stating that it was "not convinced . . . that a spiral projection follows from the claims and intrinsic evidence" with respect to the "ramp surface" limitation.  (*Id.* at 16.)  As the Court explained, "[a]lthough the claim language in at least two claims discloses a surface that may extend in the circumferential direction, while simultaneously extending in the radial direction, the specification does not describe such a surface nor is there an indication that such a surface is envisioned as a preferred embodiment."  (*Id.*)  The Court further explained:

> Nor does the Court find that a spiral projection is a logical or obvious extension of the disclosed embodiment of the spoon like surface.  It is clear from the patent

> specification and the prosecution history of the '662 family of patents that the novelty of the 'toner guide' and 'ramp surface' is the way in which they lift the toner to the mouth portion.  A spiral projection would not perform this function of lifting or scooping the toner to the mouth portion but would rather push the toner, and therefore is not within the scope of the 'toner guide' and 'ramp surface.'

(*Id.* at 16.)

Defendants argue that "[i]n its claim interpretation Opinion of August 2, 2005, this Court interpreted the term 'ramp surface' to preclude any construction utilizing the spiral guide design present in prior art bottles, and over which Ricoh had to distinguish its design in order to be able to obtain the '662 patent." (Defs.' Br. at 1, May 19, 2006.)  Defendants argue that "[t]he claimed 'ramp surface' is limited to the 'way' in which it lifts toner to the mouth portion," and refers to the Court's statement that "[a] spiral projection would not perform this function of lifting or scooping the toner to the mouth portion but would rather push the toner, and therefore is not within the scope of the . . . 'ramp surface.'" (*Id.* at 12 (quoting Aug. 2, 2005 Op. at 16).)

According to Defendants, "Ricoh's expert on infringement issues, Dr. Sturges, concedes, as he must, that Defendants' bottles push the toner along the main body of the bottle, up the conical sloped shoulder portion and out the mouth of the bottle." (*Id.* at 8.)  Defendants argue that "[i]f a structure pushes the toner to the mouth, it is by definition a spiral," and that "Ricoh concedes that the spiral groove in Defendants' bottles pushes the toner along the entire length of the bottle, including up the conical sloped shoulder portion to the mouth . . . ." (*Id.* at 12.)

In response, Plaintiff argues that the accused bottles "have ramp surfaces that cut toward the mouth so that toner is lifted to the mouth as the bottle rotates." (Pl.'s Opp'n Br. at 15, June 26, 2006.)  According to Plaintiff, "the accused bottles, such as the GPI Aficio 1035-1045 bottle and the Katun Type 450 bottle have ramp surfaces that scoop the toner to the mouth." (*Id.* at 17.)  In support of its argument, Plaintiff provides photographs and video footage showing the accused products "scooping water above the bottom of the mouth and pouring it out of the bottle like a spoon." (*Id.* at 17-18.)

The Court finds Plaintiff's arguments unpersuasive.  There is no dispute that the accused

products include a spiral projection that pushes the toner through the main body of the bottle.  In response to Defendants' arguments, Plaintiff has failed to set forth facts showing that the accused products have a "spoon like surface" that "lift[s] the toner to the mouth portion," instead of pushing the toner.  (Aug. 2, 2005 Op. at 16.)  Although Plaintiff may be able to demonstrate that the accused products are capable of bringing toner to the mouth of the bottles, they have failed to provide any evidence that the mechanism for doing so is through a "spoon like surface" that "lift[s] the toner."  The Court will therefore grant Defendants' motion for summary judgment that the accused products do not infringe the '662 patent.

### b. Claims 9 to 11 of the '195 Patent

Claim 9 of the '195 patent states:

9.     A toner bottle for use with a tone replenishing device having a bottle holder and a drive unit which rotatably drives said toner bottle when said toner bottle is horizontally mounted on said toner replenishing device, said toner bottle comprising:

[A] a hollow body containing toner;

[B] a shoulder portion forming a wall adjacent to a first end of said hollow body;

[C1] a mouth portion provided adjacent to a first end of said hollow body, wherein said mouth portion defines a mouth opening, wherein said mouth portion is smaller in diameter than said shoulder portion, and [C2] wherein said mouth portion is configured to cooperate with said toner replenishing device when said toner bottle is horizontally mounted on said toner replenishing device;

[D] a manually removable cap closing said mouth portion; and

[F] a lid exposed by removal of said manually removable cap, wherein said lid is mounted over said mouth opening to close said mouth opening.

('195 Patent, col. 28, ll. 18-39.)  Claims 10 and 11 are dependent on Claim 9 and therefore include each of these limitations.  (*Id.* at col. 28, ll. 40-50.)

According to Defendants, the Court "interpreted the claims of the '195 patent to require that certain structures on the bottles be 'adjacent' to one another."  (Defs.' Br. at 1, May 19, 2006.)  Defendants argue that, "[u]nable to demonstrate adjacency in the accused products,

Ricoh's expert has simply attempted to read out, or ignore, the 'adjacent' limitation altogether."
(*Id.*)  According to Defendants, "Ricoh has failed to provide any contention, let alone evidence, that the mouth of Defendants' bottles is adjacent to the first end of the hollow body, as this Court has construed those terms."  (*Id.* at 19.)  Defendants argue that "Ricoh has ignored the requirements of claims 9-11 that the 'mouth portion' must be 'relatively near, or nearby' the 'first end of the hollow body.'"  (*Id.* at 21.)

According to Defendants, their expert Dr. Springett "points out that the specification of the '195 patent shows what the inventors meant by 'relatively near' by uniformly disclosing bottles where the toner's flow path would experience an abrupt end to the hollow body and a rapid transition from a larger diameter to the smaller diameter of the mouth."  (Defs.' Reply Br. at 29, July 31, 2006.)  "Indeed, Dr. Springett explains that this required structure is the same reason why Ricoh's bottles require the specific claim ramp surface to lift or scoop the toner from this outer bottle diameter to the adjacent mouth diameter."  (*Id.*)  Defendants argue that, "[c]onversely, with the gradually decreasing diameter along the sloping elongated shoulders of Defendants' bottles, a spiral projection sufficiently pushes the toner up the sloped shoulders and out of the bottle," such that the first end of the hollow body is not "relatively near, or nearby" the mouth of Defendants' bottles.  (*Id.* at 28-30.)

Plaintiff responds by arguing that "[w]hen 'adjacent' is construed – as this Court expressly held – to mean 'relatively near, or nearby,' the adjacency of the mouth portion and the first end of the hollow body is plainly visible on the accused bottles, as demonstrated by Dr. Sturges's expert report on patent infringement . . . ."  (Pl.'s Opp'n Br. at 5, June 26, 2006.)  According to Plaintiff, "Defendants overlook the simple fact that no portion of the accused bottles is closer to the mouth portion than the shoulder," and that "the point where the shoulder joins the hollow body is always 'relatively near' the mouth portion, as there are no other portions of the bottle that are closer to the mouth portion than the shoulder portion."  (*Id.* at 8.)  Plaintiff claims that "[t]he '195 patent is concerned with the change in diameter along the shoulder of the

11

bottle, and Ricoh's innovative ramp surface and lid were designed to complement a bottle with a relatively large body and relatively narrow mouth." (*Id.*)

Despite the parties' arguments, there remains a genuine issue concerning whether the mouth portion of Defendants' bottles are "relatively near, or nearby" the first end of the bottles' hollow bodies. The parties have failed to identify facts in the record that would support the grant of their respective motions. For example, in their briefs, the parties do not identify facts showing the proximity of the mouth portion of Defendants' bottles to the first end of the bottles' hollow bodies. Nor does it appear that such a fact question would be susceptible to summary judgment – the issue of whether the two parts are "relatively near, or nearby" is largely a matter of degree. The Court will therefore deny both Defendants' motion and Plaintiff's motion for summary judgment concerning infringement of the '195 patent based on claims 9 to 11 of the patent.

### 2.      Plaintiff's Claims Against PNA Holdings

Defendants have moved for summary judgment on Plaintiff's claims against PNA Holdings. Plaintiff does not oppose Defendants' motion in that respect. (Pl.'s Opp'n Br. at 20, June 26, 2006.) The Court therefore grants Defendants' motion for summary judgment of Plaintiff's claims against PNA Holdings.

### C.      Defendants' Motion for Summary Judgment of Invalidity of the '662 Patent and Plaintiff's Cross-Motion for Summary Judgment of No Invalidity of the '662 Patent

The parties have filed motions seeking summary judgment of whether the '662 patent is invalid. Defendants offer two arguments in claiming that the '662 patent is invalid. First, Defendants argue that claims 37 to 40 of the patent fail to satisfy the written description requirement of 35 U.S.C. § 112. (Defs.' Br. at 1, May 19, 2006.) Second, they argue that claim 37 of the patent was anticipated by Japanese Application No. SHO 60 [1985] – 159769 ("Kitajima") and U.S. Patent No. 4,212,264 ("Knechtel"). (*Id.*, Exs. 9-10.) In its opposition

papers, Plaintiff argues that claims 37 to 40 of the '662 patent satisfy the written description requirement of 35 U.S.C. § 112, and that the Kitajima and Knechtel references do not anticipate claim 37 of the patent.  (Pl.'s Opp'n Br. at 1, June 26, 2006.)  Plaintiff seeks summary judgment that the '662 patent is not invalid.

### 1.      The "Written Description" Requirement of 35 U.S.C. § 112

Patents are presumptively valid.  35 U.S.C. § 282.  A party seeking to overcome that presumption must produce clear and convincing evidence to the contrary.  *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002).  The presumption of validity extends to assertions of invalidity concerning the written description requirement.  *In re Gabapentin Patent Litig.*, 395 F. Supp. 2d 175, 179 (D.N.J. 2005) (citing *Ralston Purina Co. v. Far-Mar-Co.*, 772 F.2d 1570, 1573-74 (Fed. Cir. 1985)).  The written description requirement is set forth in 35 U.S.C. § 112, which states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112.

"To fulfill the written description requirement, the patent specification must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (internal quotations omitted).  Satisfaction of this requirement is a factual determination, to be made on a case-by-case basis.  *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991).

In construing the term "ramp surface" in its August 2, 2005 Opinion, the Court stated:

> Although the claim language in at least two claims discloses a surface that may extend in the circumferential direction, while simultaneously extending in the radial direction, the specification does not describe such a surface nor is there an indication that such a surface is envisioned as a preferred embodiment.  Nor does the Court find that a spiral projection is a logical or obvious extension of the

13

disclosed embodiment of the spoon like surface.

(Aug. 2, 2005 Op. at 16.)

### a.    Claim 37 of the '662 Patent

Defendants argue that the Court has therefore "already ruled as a matter of law that claims 37-40 of the '662 patent, which require a circumferential and radially extending ramp surface, do not satisfy the written description requirement." (Defs.' Br. at 12, May 19, 2006.)  According to Defendants, "[t]his Court was addressing the construction of the term 'ramp surface' and was therefore reading the '662 patent from the perspective of a person of ordinary skill in the art." (*Id.*)  Defendants argue that, "[f]rom that vantage point, this Court ruled that the '662 patent specification does not describe a circumferential and radially extending ramp surface." (*Id.*) Defendants argue that as a result, "there is no issue of fact for the jury to decide:  a person of ordinary skill in the art[,] upon reading the '662 patent specification[,] would not understand that the Ricoh inventors invented a 'circumferential and radially extending ramp surface.'" (*Id.*)

The Court finds Defendants' argument unpersuasive.  In construing the term "ramp surface," the Court gave no indication that the '662 patent failed to adequately describe the term. Indeed, in construing the term "ramp surface," the Court referred to the intrinsic evidence, *i.e.*, the patent claims, the specification, and the prosecution history, and found it sufficient to support construing the term to require "lifting or scooping the toner to the mouth portion," as opposed to "push[ing] the toner[.]"  (*See* Aug. 2, 2005 Op. at 16.)  The Court therefore rejects Defendants' argument that the '662 patent is invalid because it fails to satisfy the written description requirement.

Plaintiff has filed its cross-motion for partial summary judgment that the '662 patent is not invalid.  It argues, in part, that the patent satisfies the written description requirement of 35 U.S.C. § 112.  Although it opposes Defendants' argument that the term "ramp surface" fails to satisfy the written description requirement, Plaintiff has not addressed any of the other terms in

the '662 patent.  The Court will therefore deny Plaintiff's cross-motion for summary judgment

that the patent satisfies the written description requirement.

### 2.        Anticipation

A patent is invalid as anticipated if "the invention . . . was patented or described in a

printed publication in this or a foreign country . . . more than one year prior to the date of the

application for patent in the United States . . . ."  35 U.S.C. § 102(b).  The first step of an

anticipation analysis is claim construction, which is a question of law.  *Helifix Ltd. v. Blok-Lok,

Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000).  The second step involves a comparison of the

construed claim to the prior art.  *Id.*

"To anticipate a claim, a prior art reference must disclose every limitation of the claimed

invention, either explicitly or inherently."  *Atlas Powder Co. v. IRECO, Inc.*, 190 F.3d 1342,

1346 (Fed. Cir. 1999) (internal quotations omitted).  "Under the principles of inherency, if the

prior art necessarily functions in accordance with, or includes, the claimed limitations, it

anticipates."  *Id.* at 1347.  The prior art "must disclose every element of the challenged claim and

enable one skilled in the art to make the anticipating subject matter."  *PPG Indus., Inc. v.

Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996).

Claim anticipation in prior art is a finding of fact.  *See Titanium Metals Corp. of Am. v.

Banner,* 778 F.2d 775, 780 (Fed. Cir. 1985).  To be entitled to summary judgment, then, the

moving party must establish that "there [are] no material facts in dispute relating to its assertion

of anticipation," and must "present clear and convincing evidence" in support of that assertion.

*Helifix Ltd.*, 208 F.3d at 1346.

### a.        The Kitajima Reference

According to Defendants, with respect to claim 37 of the '662 patent, "Ricoh's position is

that a bottle has the claimed 'ramp surface' when a spiral on its internal structure changes in

pitch in order to effectively discharge toner from the bottle." (Defs.' Br. at 14, May 19, 2006.) Defendants argue that "Kitajima discloses precisely the same type of structure as contained in the accused products – a structure that Ricoh contends is the 'ramp surface' of claim 37." (*Id.* at 12.) Defendants claim that "Kitajima discloses altering the pitch of an internal spiral fin in order to move toner up a conical sloped shoulder and out of the mouth of the bottle," and that the '662 patent is therefore anticipated by the Kitajima reference. (*Id.* at 14-15.)

In its opposition papers, Plaintiff argues that "[t]he Kitajima reference describes a bottle with a spiral fin 43 that does not constitute or include a 'ramp surface' as defined by claim 37 of the '662 patent." (Pl.'s Opp'n Br. at 4, June 26, 2006.) Plaintiff claims that "[t]he Kitajima bottle does not anticipate claim 37 because its spiral pushes toner to the mouth of the bottle, rather than lift or scoop the toner up to the mouth of the bottle." (*Id.* at 5.) In support of its argument, Plaintiff refers to testimony by Defendants' expert Dr. Springett. (*Id.*) When asked whether Kitajima discloses a "ramp surface," Dr. Springett responded: "My opinion is that the Kitajima does not have a ramp surface . . . ." (Mattson Cert. Ex. 7 at 83:8-9, June 26, 2006.) Plaintiff also refers to testimony by its expert Dr. Sturges, who stated that "[w]hat's important is that Kitajima does not have any lifting mode and that Kitajima pushes the toner throughout its entire length." (English Cert. Ex. 12 at 68:12-15, May 11, 2006.)

In response, Defendants refer to Dr. Sturges's testimony that "since Kitajima . . . is saying that there is a pitch, then that's a teaching, and one of ordinary skill would know that screws have pitches and pitches can be variable." (Defs.' Reply Br. at 10, July 31, 2006; English Cert. Ex. 12 at 98:12-19, May 11, 2006.) Defendants argue that Kitajima anticipates the '662 patent because "[t]he accused bottles have a spiral with a change in pitch," and "Kitajima [also] discloses a spiral with a change in pitch." (Defs.' Reply Br. at 12, July 31, 2006.)

The undisputed record shows that the '662 patent is not anticipated by the Kitajima reference. Both Dr. Springett and Dr. Sturges have testified that Kitajima does not provide for a ramp surface that lifts toner in the manner taught by the '662 patent. Although Defendants refer

16

to testimony by Dr. Sturges that Kitajima discloses "a spiral with a change in pitch," and that the accused bottles have that limitation, Defendants have not identified any testimony supporting their argument that the limitation anticipates the "ramp surface" that the '662 patent teaches.  The Court will therefore deny Defendants' motion for summary judgment that the '662 patent is anticipated by the Kitajima reference, and grant Plaintiff's cross-motion for summary judgment that the '662 patent is not anticipated by the Kitajima reference.

### b.      The Knechtel Reference

Defendants also argue that claim 37 of the '662 patent is anticipated by Knechtel. Defendants argue that "the shovel 44 of Knechtel is a ramp surface that scoops or lifts toner to the mouth."  (Defs.' Br. at 22, May 19, 2006.)  They refer to the Court's August 2, 2005 Opinion, which states:

> It is clear from the patent specification and the prosecution history of the '662 patent that the novelty of the 'toner guide' and 'ramp surface' is the way in which they lift the toner to the mouth portion.  A spiral projection would not perform this function of lifting or scooping the toner to the mouth portion but would rather push the toner, and therefore is not within the scope of the 'toner guide' and 'ramp surface.'

(*Id.* (quoting Aug. 2, 2006 Op. at 16).)  Defendants argue that "Knechtel expressly teaches that the shovel 44 scoops or lifts the toner to the opening 42 of the bottle" by stating:

> an optimum amount of toner is scooped portionwise from the toner contained in the cartridge by the shovel 44 in accordance of the size of the opening 45 provided therein and the optimum amount of toner thus divided is supplied to the developer container every time.

(*Id.* (quoting English Cert. Ex. 9 at col. 7, ll. 9-14, May 19, 2006).)

Plaintiff argues that "[a]s described by Knechtel, the shovel 44 is a shield that limits the amount of toner that is pushed out of the cartridge by the spiral 41 and is not a ramp surface that lifts or scoops toner to the mouth of a bottle as required by the 'ramp surface' in claim 37 of the '662 patent."  (Pl.'s Br. at 8, June 26, 2006.)  According to Plaintiff, "[t]he toner flow path 46 reveals that the shovel 44 does nothing more than to regulate or meter the flow of toner as the

17

toner is pushed up and over the edge of small opening 42." (*Id.*)  Regarding the use of the word "scoop," Plaintiff argues that "the written description and Figure 5 indicate that the shovel is merely scooping into the toner to limit the amount of toner that is pushed out of the cartridge by the spiral 41 . . . ." (*Id.*)  Plaintiff argues that "Figure 6 of Knechtel clearly shows that the shovel 44, which is pointed downward, plays no role in dispensing toner from the cartridge, other than to limit the amount of toner that the spiral can force through the openings 42 and 45." (*Id.* at 9.)

In his rebuttal expert report, Dr. Sturges responds to Dr. Springett's opinion that the '662 patent is anticipated by Knechtel.  (English Cert. Ex. 5 at 21-22, May 19, 2006.)  According to Dr. Sturges, "there is no description of the 'shovel' lifting or scooping the toner to the mouth in any way" in the Knechtel patent.  (*Id.* at 23.)  Dr. Sturges further states that "the purpose of the 'shovel' 44 is to regulate the amount of toner exiting the bottle by creating an internal opening 45 whose size determines the portion of toner delivered," and that "the toner is pushed out the opening 42 and is not lifted or scooped to the opening 42." (*Id.*)  There remains, then, a genuine issue of material fact with respect to whether the Knechtel reference anticipates the scooping or lifting of toner in the manner taught by the '662 patent.  The Court will therefore deny Defendants' motion and Plaintiff's cross-motion for summary judgment concerning whether the '662 patent is anticipated by the Knechtel reference.

**D.  Plaintiff's Motion for Summary Judgment of Enforceability and Other Defenses for the '963 Patent, or for a Bifurcated Trial on Enforceability and Other Defenses**

Plaintiff seeks summary judgment of several of the defenses that Defendants have asserted with respect to the '963 patent.  Plaintiff argues that "[a]lthough the '963 patent is valid and infringed by every accused product, there are several defenses remaining that must be first addressed before the Court finds the '963 patent is enforceable."  (Pls.' Br. at 1, Sept. 2, 2005.)  Those defenses include:  (1) inequitable conduct; (2) equitable estoppel; (3) laches; (4) waiver; (5) acquiescence; (6) prosecution laches; (7) prosecution history estoppel; (8) patent misuse; and

(9) unclean hands.  (*Id.* at 5, 21.)


### 1.        Inequitable Conduct

Patent applicants have a duty to prosecute patents with candor, good faith, and honesty. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).  This duty may be breached by "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive."  *Id.*  "One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO."  *Id.*  An accused infringer "seeking to have a patent declared unenforceable has a heavy burden to meet."  *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003).

To determine whether a reference is material, courts refer to the materiality standard set forth in PTO Rule 56.  *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1129 (Fed. Cir. 2006).  Information is deemed material if:

> [I]t is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
>
>> (i) Opposing an argument of unpatentability relied on by the Office, or
>>
>> (ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b).  "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct."  *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed. Cir. 1992) (internal quotations omitted).

"Even if an omission is found to be material, the omission must also be found to have

been made with the intent to deceive." *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1191 (Fed. Cir. 2006). In an inequitable conduct claim, the Federal Circuit has made clear that intent to deceive "cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Purdue*, 438 F.3d at 1134 (internal quotations omitted). To satisfy this requirement, "the involved conduct, viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *M. Eagles Tool Warehouse, Inc. v. Fischer Tooling Co.*, 439 F.3d 1335, 1341 (Fed. Cir. 2006) (internal quotations omitted).

"Once threshold findings of materiality and intent are established, the court must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Molins*, 48 F.3d at 1178.

Plaintiff seeks summary judgment that it did not engage in any inequitable conduct with respect to the '963 patent. According to Plaintiff, Defendants assert two grounds for alleging that the '963 patent is unenforceable because of inequitable conduct. First, Defendants claim that certain prior art (namely, "Ayotte") should have been – and was not – disclosed to the PTO during the prosecution of the '963 patent. (Pl.'s Br. at 7-8, Sept. 2, 2005.) Second, Defendants claim that Kitajima should have been – and was not – disclosed to the PTO during the prosecution of the '662 patent, and that the nondisclosure renders the '963 patent unenforceable based on a theory of infectious unenforceability. (*Id.* at 8, 14.)

### a.     The Ayotte Reference

Plaintiff argues that there is no genuine dispute that it did not engage in inequitable conduct in prosecuting the '963 patent application. According to Plaintiff, Defendants have deposed four of the six inventors of the '963 patent, and none of them have testified to remembering – or having seen – the Ayotte reference. (Pl.'s Br. at 10, Sept. 2, 2005.) Plaintiff also argues that Mr. Suzuki, the Japanese patent agent in charge of the prosecution of the '963

20

patent on behalf of Plaintiff, has testified that he was not aware of Ayotte while prosecuting the '963 patent application. (*Id.*)  Moreover, Plaintiff argues that during the depositions of Messrs. Pous and Sunderdick, two attorneys involved in the prosecution of the '963 patent application, Defendants failed to ask whether the attorneys had any knowledge of the Ayotte reference. (*Id.* at 11.)  Plaintiff argues that based on the undisputed record, summary judgment is appropriate.

In opposing Plaintiff's motion, Defendants claim that there is a genuine issue concerning whether Plaintiff intended to mislead or deceive the PTO by allegedly withholding the Ayotte reference.  According to Defendants, "[w]hile prosecuting the '963 application, Ricoh was also prosecuting the '059 patent application, which is a Ricoh toner bottle patent in an unrelated family." (Defs.' Opp'n Br. at 14, Oct. 17, 2005.)  Defendants claim that "[t]he '059 patent claims are for a 'removably fitted cap on a recyclable toner container' and are similar in substance, function and nature to the removable cap and lid claimed in the '963 patent." (*Id.*)  According to Defendants, the examiner for the '059 patent application described the Ayotte reference as "pertinent to applicant's disclosure" because it disclosed art in caps. (*Id.* at 15.)  Defendants argue that Plaintiff's knowledge of the Ayotte reference is demonstrated by documents signed by Mr. Gnuse, one of the attorneys representing Ricoh in prosecuting the '059 patent application. (*Id.* at 14, 16.)  According to Defendants, "[t]he '059 patent file history includes Mr. Gnuse's signature or stamp on ten separate documents," and "[a]t the same time, Mr. Gnuse was also signing papers, including Information Disclosure Statements in the co-pending '963 patent application." (*Id.* at 16.)  Defendants state that Mr. Gnuse "worked concurrently on both the '059 and '963 patent applications and knew of the prior art references cited by the Examiner in the '059 application." (*Id.* at 22.)  Defendants argue that "[n]one of the Information Disclosure Statements Mr. Gnuse filed include the prior art identified by the Examiner in the '059 application (including Ayotte), nor did he ever disclose the Examiner's rejection of lid claims based upon this art in the '059 application." (*Id.* at 16.)  Defendants argue that "Ricoh admits knowing about the Ayotte prior art reference, as well as the other pertinent

21

prior art references cited by the Examiner of the '059 application." (*Id.* at 22, Ex. 33.)

Viewing these facts in the light most favorable to Defendants, the Court concludes that there is no genuine issue with respect to whether Defendants can demonstrate the element of intent to deceive. The fact that Mr. Gnuse submitted forms in prosecuting both the '059 and the '963 patent applications would demonstrate, at best, that one of Plaintiff's attorneys had knowledge of the Ayotte reference. It would not, however, constitute clear and convincing evidence that Plaintiff had the specific intent to deceive the PTO by withholding that reference in the prosecution of the '963 patent. Moreover, despite having deposed Mr. Gnuse in the course of this litigation, Defendants have not identified any testimony by Mr. Gnuse that would support a finding of specific intent by Plaintiff to deceive the PTO in prosecuting the '963 patent application. In the absence of such evidence, the Court will grant Plaintiff's motion for summary judgment that there was no inequitable conduct resulting from the failure to include the Ayotte reference in the prosecution of the application for the '963 patent.

### b.    The Kitajima Reference

Plaintiff also seeks summary judgment that there is no inequitable conduct with respect to its failure to include the Kitajima reference in its prosecution of the '662 patent. Plaintiff argues that although Defendants have deposed four of the six inventors named in the '662 patent, two of them testified that they did not recall the Kitajima reference. (Pl.'s Br. at 15, 17, Sept. 2, 2005.) Regarding the two other inventors, Mr. Ikeda and Mr. Makita, Plaintiff argues that there is no evidence showing that either of them knew of the alleged materiality of Kitajima, or that they had the intent to deceive the PTO. (*See id.* at 16-18.) Plaintiff also argues that there is no evidence in the record showing that Mr. Sunderdick – one of Plaintiff's attorneys involved with prosecuting the patent – was aware of the Kitajima reference. (*Id.* at 18.)

In addition, Plaintiff argues that the Kitajima reference is not material to the '662 patent. Plaintiff refers to the Court's August 2, 2005 Opinion, which states:

22

> Throughout the '662 family patent specification the structure that corresponds to the function of lifting the toner to the mouth portion is raised portion 85.  In the preferred embodiment, it is formed by a surface that has a concave shape which scoops toner that is guided down the body of the bottle by the 'guide groove' and lifts the toner to the mouth portion.

(Aug. 2, 2005 Op. at 13.)  According to Plaintiff, "in order for a prior art toner bottle to even be relevant to the bottle claimed in the '662 patent, it must have a guide means that 'has a concave shape which scoops the toner,' i.e. includes a 'spoon' portion."  (Pl.'s Br. at 19, Sept. 2, 2005.)  Plaintiff refers to Mr. Ikeda's testimony to support its claim that Kitajima does not have a 'spoon' or concave shape inside to scoop toner.  (*Id.*)

In their opposition, Defendants state that Mr. Ikeda and Mr. Makita "produced a report nine months before the filing of the '662 patent application that analyzed nineteen different prior art references including the Kitajima reference."  (*See* Defs.' Opp'n Br. at 19, Oct. 17, 2005; Keegan Cert. Ex. 43, Oct. 17, 2005.)  Defendants also argue that "the inventors indicated that they located the Kitajima reference in Ricoh's 'Ohmori patent room,' where Ricoh's Mr. Suzuki routinely conducted prior art searches."  (Defs.' Opp'n Br. at 19, Oct. 17, 2005.)  Based on this evidence, Defendants argue that "[t]here is no dispute that the inventors knew about Kitajima . . . ."  (*Id.*)

Defendants also argue that the Kitajima reference is material.  According to Defendants, "Kitajima discloses the combination of a 'small or reduced diameter mouth in conjunction with the guide means for providing movement of the material from the wide portion to the narrow portion when the material is rotated.'"  (*Id.*)  Defendants argue that "Kitajima thus contradicts Ricoh's assertion that these characteristics were not present in the prior art."  (*Id.*)

The Court finds Defendants' arguments unpersuasive.  The record shows only that two of Plaintiff's inventors were – or should have been – aware of the Kitajima reference when Plaintiff prosecuted the '662 patent application.  Defendants fail to identify any facts in the record that would support finding specific intent by Plaintiff to deceive the PTO.  Defendants have also failed to demonstrate that the Kitajima reference was material to the '662 patent.  In particular,

Defendants have not explained why Kitajima is material to the limitation of a "spoon like surface" that "lift[s] the toner to the mouth portion," as disclosed by the '662 patent. (Aug. 2, 2005 Op. at 16.)

The Court will therefore grant Plaintiff's motion for summary judgment that the '662 patent is not invalid as a result of the Kitajima reference.

## 2.      Laches and Equitable Estoppel

Laches and equitable estoppel are recognized as equitable defenses to a patent infringement claim under 35 U.S.C. § 282. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). "As equitable defenses, laches and equitable estoppel are matters committed to the sound discretion of the trial judge . . . ." *Id.*

Laches is defined as "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *Id.* at 1028-29. "Where the defense of laches is established, the patentee's claim for damages prior to suit may be barred." *Id.* at 1028.

In asserting a laches defense, the defendant has the burden to prove, by a preponderance of the evidence, that:

1.      the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and

2.      the delay operated to the prejudice or injury of the defendant.

*Id.* at 1032, 1045. "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Id*. at 1032. "However, the period does not begin prior to issuance of the patent." *Id*. "Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense," and "[s]uch prejudice may be either economic or evidentiary." *Id.* at 1033.

In asserting a defense of equitable estoppel, the defendant has the burden of proving, by a

preponderance of the evidence, that:

> [1.]    The [plaintiff], who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence.

> [2.]    The [defendant] relies upon that communication.

> [3.]    And the [defendant] would be harmed materially if the [plaintiff] is later permitted to assert any claim inconsistent with his earlier conduct.

*Id.* at 1041, 1045.  To satisfy the first element, "[t]he patentee's conduct must have supported an inference that [it] did not intend to press an infringement claim against the alleged infringer."  *Id.* at 1042.  "The alleged infringer also must know or reasonably be able to infer that the patentee has known of the [defendant's] activities for some time."  *Id.*  To establish the second element, "[t]he accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action."  *Id.* at 1042-43.  "Finally, the accused infringer must establish that it would be materially prejudiced if the patentee is now permitted to proceed."  *Id.* at 1043.  "As with laches, the prejudice may be a change of economic position or loss of evidence."  *Id.*

Plaintiff argues that summary judgment should be entered against Defendants with respect to laches and equitable estoppel.  According to Plaintiff, Defendants assert the defenses based on Plaintiff's letter to Katun and Nashua dated November 1, 1995, which advised them that the '662 patent issued.  (Pl.'s Br. at 21, Sept. 2, 2005.)  Plaintiff claims, however, that "Defendants did not begin to produce the infringing products until 1999, over four years after the 1995 letter."  (*Id.* at 21-22.)  Plaintiff argues that Defendants are unable to demonstrate that they reasonably relied on activities prior to the filing of the '963 patent application and its subsequent issuance, or material prejudice resulting from such reliance, in asserting their laches and equitable estoppel defenses.  (*Id.* at 22.)

In their opposition, Defendants argue that "[t]here is no issue of material fact that Ricoh obtained toner cartridges from Defendants in 1999," and that "Ricoh's knowledge of the products at issue in this lawsuit extends at least to four years prior to the initiation of the lawsuit."  (Defs.'

Opp'n Br. at 25-26, Oct. 17, 2005.)  Moreover, Defendants argue that because Plaintiff sent its November 1995 letter informing Defendants of the issuance of the '662 patent, the Court should infer that Plaintiff was "monitoring Defendants' activities and knew that Defendants were producing toner cartridges for use in Ricoh machines at the time."  (*Id.* at 26; Keegan Cert. Ex. 55, Oct. 17, 2005.)

Despite their arguments concerning Plaintiff's alleged delay in filing the present lawsuit, Defendants have failed to identify any evidence showing that they relied on Plaintiff's inaction, or that Plaintiff's alleged inaction resulted in prejudice to them.  (*See* Defs.' Opp'n Br. at 26-27.) Although Defendants refer to their responses to certain of Plaintiff's interrogatories, Defendants "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The Court will therefore grant Plaintiff's motion for summary judgment with respect to Defendants' laches and equitable estoppel defenses.

### 3.    Waiver and Permissible Repair

Although "[a] patent grants its owner the right to exclude others from making, using, or selling the patented invention, . . . all or part of the right to exclude may be waived by granting a license, which may be express or implied."  *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995).  The existence of an implied license is a question of law, and it is the alleged infringer that has the burden of establishing its existence. *Id.* at 877-78.

A party may assert the defense pursuant to the doctrine of permissible repair.  *See Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1101-02 (Fed. Cir. 2001).  Under that doctrine, "[t]he purchaser of a patented article has the rights of any owner of personal property, including the right to use it, repair it, modify it, discard it, or resell it, subject only to overriding conditions of the sale."  *Id.* at 1102.  "The fact that an article is patented gives the purchaser

26

neither more nor less rights of use and disposition." *Id.* "However, the rights of ownership do not include the right to construct an essentially new article on the template of the original, for the right to make the article remains with the patentee." *Id.* Replacing parts of a patented article may fall within the scope of this doctrine, provided that the parts being replaced are themselves unpatented. *See id.* at 1103 (stating that "[m]ere replacement of individual *unpatented parts* . . . is no more that the lawful right of the owner to repair his property") (emphasis added). It is the party asserting the defense that has the burden of proving, by a preponderance of evidence, that its activities constitute permissible repair. *Id.* at 1102.

Plaintiff argues that summary judgment should be entered against Defendants with respect to their waiver defense. According to Plaintiff, in asserting that defense, Defendants rely only on Plaintiff's November 1, 1995 letter regarding the issuance of the '662 patent. (Pl.'s Br. at 23, Sept. 2, 2005; Keegan Cert. Ex. 55, Oct. 17, 2005.) Plaintiff argues that this evidence, without more, fails to establish a waiver of its rights because the '963 patent is the subject of litigation, and the letter predated the '963 patent by approximately five years. (*Id.*)

In response, Defendants argue that "Ricoh has intentionally put forth products that are 'repair' or 'replacement' parts for its copiers and printers." (Defs.' Opp'n Br. at 28, Oct. 17, 2005.) Defendants argue that Plaintiff therefore "intentionally indicated that companies manufacturing, designing and producing toner cartridges to function in their copier machines and replace the worn-out and spent original cartridges would not be subject to infringement actions" because "[o]therwise, such an effort to use the patent law to control and dominate the market for after-market toner products would constitute an impermissible tying arrangement and violate the antitrust laws." (*Id.*)

The Court rejects Defendants' arguments for two reasons. First, they have not identified any evidence in the record supporting their claims, as required by Rule 56. Second, even if Defendants' assertions were supported by the record, Defendants fail to explain why their accused products constitute "permissible repair" of Plaintiff's copiers. Here, the accused

products are not "individual unpatented parts," but rather examples of a distinct category of products – namely, toner bottles – that are subject to patent protection. *Jazz Photo*, 264 F.3d at 1103. In addition, Defendants have not argued that Plaintiff's patented designs preclude the use of alternative designs that may also used in Plaintiff's copier machines. Indeed, Defendants make the opposite argument, claiming that their toner bottles are not precluded by those patents. The Court will therefore grant Plaintiff's motion for summary judgment of Defendants' waiver defense.

### 4.    Unclean Hands

The doctrine of unclean hands is also recognized as an equitable defense to patent infringement. *See Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002). Pursuant to the doctrine, "[the plaintiff] must be frank and fair with the court, nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court." *Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.*, 380 F. Supp. 2d 457, 463 (D.N.J. 2005) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933) (internal quotations omitted)). The doctrine is applied "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller*, 290 U.S. at 245. As the Third Circuit Court of Appeals has noted, "the courts in this Circuit have generally been clear that the connection between the misconduct and the claim must be close." *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999).

Plaintiff claims that the same arguments that it made with respect to inequitable conduct and laches apply to this defense. (Pl.'s Br. at 27, Sept. 2, 2005 (quoting *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990) ("Indeed, what we have termed 'inequitable conduct' is no more than the unclean hands doctrine applied to particular conduct before the PTO").) Defendants also reiterate their inequitable conduct arguments.

28

As the Court has already explained, Defendants have not identified any evidence supporting their inequitable conduct defense.  To the extent that the parties rely on their arguments concerning inequitable conduct, the Court will also grant Plaintiff's motion for summary judgment with respect to Defendants' unclean hands defense.

### 5.    Defendants' Other Defenses

Plaintiff also seeks partial summary judgment against Defendants with respect to several additional defenses.  Those defenses are acquiescence, prosecution laches, prosecution history estoppel, and patent misuse.  (Pl.'s Br. at 24-26, Sept. 2, 2005.)  In their response brief, Defendants fail to address Plaintiff's motion with respect to these defenses.  The Court will therefore grant Plaintiff's motion for summary judgment of those defenses.

### E.    Plaintiff's Motion for Summary Judgment of Defendants' Antitrust Counterclaims

#### 1.    *Walker Process* Antitrust Claims

The Supreme Court has stated that "the enforcement of a patent procured by fraud on the Patent Office may be violative of [Section] 2 of the Sherman Act provided the other elements necessary to a [Section] 2 case are present."  *Walker Process Equip., Inc. v. Food Mach. and Chem. Corp.*, 382 U.S. 172, 174 (1965).   Proof that a patent was obtained "by knowingly and willfully misrepresenting facts to the Patent Office . . . [is] sufficient to strip [a patent holder] of its exemption from the antitrust laws."  *Id.* at 177.

To establish a *Walker Process* fraud claim, the claimant must prove:

1.    [a] false representation or deliberate omission of a fact material to patentability

2.    made with the intent to deceive the patent examiner

3.    on which the examiner justifiably relied in granting the patent, and

4.    but for which misrepresentation or deliberate omission the patent would not have been granted.

29

*In re Remeron Antitrust Litig.*, 335 F. Supp. 2d 522, 528 (D.N.J. 2004) (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998)).

"A finding of inequitable conduct does not by itself suffice to support a finding of *Walker Process* fraud, because 'inequitable conduct is a broader, more inclusive concept than the common law fraud needed to support a *Walker Process* counterclaim.'" *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007) (quoting *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069 (Fed. Cir. 1998)). "To demonstrate *Walker Process* fraud, a claimant must make higher threshold showings of both materiality and intent than are required to show inequitable conduct." *Id.* Moreover, "a finding of *Walker Process* fraud cannot result from an equitable balancing between the two factors; a strong showing of one cannot make up for a deficiency in the other." *Id.* at 1347.

"'A misrepresentation is material if the patent would not have issued 'but for' the omission.'" *Nobelpharma*, 141 F.3d at 1070 (quoting *United States v. Ciba-Geigy Corp.*, 508 F. Supp. 1157, 1170 (D.N.J. 1979)). However, "[a] mere failure to cite a reference to the PTO will not suffice." *Id.* at 1071. To establish the claim, it is necessary to show "independent and clear evidence of deceptive intent together with a clear showing of reliance . . . ." *Id.* *See also C.R. Bard*, 157 F.3d at 1364 ("'[K]nowing and willful fraud' as the term is used in *Walker* can mean no less than clear, convincing proof of intentional fraud involving affirmative dishonesty, 'a deliberately planned and carefully executed scheme to defraud [the PTO]'") (quoting *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979)).

Demonstrating fraudulent acquisition of the asserted patent, however, "is the beginning, not the end, of the inquiry." *Dippin' Dots*, 476 F.3d at 1348. The claimant "must also show the basic elements of an antitrust violation defined by the regional circuit's law . . . ." *Id.*

## 2.    Defendants' Antitrust Counterclaims

Plaintiff seeks summary judgment against Defendants with respect to their antitrust

counterclaims, and advances four arguments in support of its motion.  First, with respect to the
'963 patent, Plaintiff argues that Defendants are unable to prove by clear and convincing
evidence that the patent would not have issued if certain references, including the Ayotte
reference, had been submitted to the PTO during the prosecution of the patent.  (Pl.'s Br. at 7-8,
Oct. 21, 2005.)  Second, with respect to the '662 and '631 patents, Plaintiff argues that
Defendants cannot prove by clear and convincing evidence that the patents would not have issued
if Kitajima had been disclosed to the PTO during the prosecution of those patents.  (*Id.* at 9.)
Third, with respect to the '935 patent, Plaintiff argues that Defendants are unable to prove by
clear and convincing evidence that the patent would not have issued if certain references,
including the Knechtel reference, had been disclosed to the PTO during the prosecution of the
application for the '935 patent.  (*Id.* at 10.)  Finally, Plaintiff argues that Defendants are unable to
prove the requisite intent, namely, committing knowing and willful fraud upon the PTO during
the prosecution of the relevant patents.  (*Id.* at 11.)

　　　　In addition to opposing Plaintiff's motion on the merits, Defendants also argue that the
motion is premature because the parties have not completed discovery concerning Defendants'
antitrust counterclaims.  (Defs.' Opp'n Br. at 13, Nov. 17, 2005.)  According to Defendants,
"Ricoh has refused to provide antitrust liability discovery and has objected to the reasonable
discovery requests by Defendants . . . ."  (*Id.* at 13-14.)  Defendants argue that "Ricoh's attempt
to bifurcate the *Walker Process* claim into a 'first' step and subsequent steps is not supported by
any scheduling order in this case and is not supported by any case law either . . . ."  (*Id.* at 29.)
Defendants argue that Plaintiff's motion should therefore await the completion of discovery with
respect to all the elements.  (*See id.*)

　　　　The Court agrees with Defendants that Plaintiff's motion should be denied as premature.
As Plaintiff notes, "[t]he Court's Order and Opinion of July 14, 2005 bifurcated the antitrust
counterclaims, but did not stay economic and financial antitrust discovery."  (Pl.'s Br. at 3 n.2,
Oct. 21, 2005.)  Plaintiff concedes that the parties have not yet completed discovery with respect

to Defendants' antitrust counterclaims.  (*See* Pl.'s Reply Br. at 1, Nov. 21, 2005.)  In light of the
fact that the relevant discovery has not yet been completed, the Court will deny Plaintiff's motion
without prejudice.

**F.      Plaintiff's Motion to Strike Portions of Defendants' Reply Briefs**

Plaintiff has filed a motion seeking to strike portions of Defendants' reply briefs, which
Defendants filed in support of their motions for partial summary judgment of non-infringement
of the '662 and '195 patents, and of invalidity of the '662 patent.  (Pl.'s Br. at 1, Aug. 14, 2006.)
According to Plaintiff, those briefs contain "misleading and misrepresentative information"
concerning "the structure and function of the GPI 450 bottle," in two respects.  (*Id.*)  First,
Plaintiff argues that Defendants' reply briefs contain a photograph of the GPI 450 bottle that
constitutes a misrepresentation.  (*Id.* at 2.)  According to Plaintiff, the photograph was not taken
from an exhibit attached to Mr. English's certification, as claimed, but differs because "the
perspective of the camera is different in the photograph used in the reply briefs, so that the
bottle's spiral misleadingly appears to end at the bottom of the mouth when, in fact, it actually
continues around the bottle . . . ."  (*Id.*)  Second, Plaintiff claims that Defendants' argument that
the GPI 450 bottle has a ramp surface is "not true" because the bottle "relies upon the screw-like
action of the spiral to push the contents of the bottle . . . up the shoulder of the bottle to the
mouth."  (*Id.* at 3.)

Plaintiff's motion to strike appears to be no more than an attempt to argue the merits of
Defendants' motions for partial summary judgment.  On June 15, 2006, the Court set forth the
briefing schedule for Defendants' motions for partial summary judgment.  The Court allowed
Plaintiff to file its opposition briefs and its cross-motions by June 26, and allowed Defendants to
file reply briefs and briefs in opposition to the cross-motions by July 31.  The Court stated that
"[n]o further replies will be permitted."  (June 15, 2006 Order at 2.)  Despite the order, Plaintiff
seeks to respond to Defendants' reply briefs, albeit in the form of a separate motion.  Plaintiff

provides no explanation why portions of Defendants' reply briefs should be stricken from the record – it argues only that they should be rejected in the course of deciding Defendants' motions.  The Court will therefore deny Plaintiff's motion to strike.


**IV.    CONCLUSION**

For these reasons, the Court will:  (1) grant Plaintiff's motion for summary judgment of the enforceability of the '963 patent; (2) deny Plaintiff's motion for summary judgment of Defendants' antitrust counterclaims; (3) deny Defendants' motion for summary judgment of invalidity of the '662 patent; (4) grant in part and deny in part Plaintiff's cross-motion for summary judgment of validity of the '662 patent; (5) grant in part and deny in part Defendants' motion for summary judgment of noninfringement of the '662 and '195 patents, and for no liability of PNA Holdings; (6) deny Plaintiff's cross-motion for summary judgment of infringement of the '195 Patent; and (7) deny Plaintiff's motion to strike certain portions of Defendants' reply briefs.  An appropriate form of order is filed herewith.


Dated:  July 23 , 2007

        s/ Garrett E. Brown, Jr.
        GARRETT E. BROWN, JR., U.S.D.J.